Filed 6/18/14  P. v. Halverson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JON ERIC HALVERSON,<br><br>        Defendant and Appellant. | C070322<br><br>(Super. Ct. Nos. 05F02234,<br>    07F09466, 09F09101) |

A jury convicted defendant Jon Eric Halverson of attempted murder, assault with a deadly weapon, and battery causing serious bodily injury in connection with a 2009 attack against his former girlfriend, T.O.  The trial court admitted evidence of two incidents of domestic violence committed by defendant against M.W., a woman with whom defendant had a long-term dating relationship.  The evidence was admitted under

1

Evidence Code section 1109,[1] which authorizes the admission of evidence that the defendant committed other acts of domestic violence in a case where the defendant is accused of domestic violence.

Defendant now contends (1) the trial court abused its discretion in admitting the prior domestic violence evidence, and (2) section 1109 does not apply because defendant and T.O. did not have a dating relationship.

We conclude (1) the trial court did not abuse its discretion in admitting the evidence of uncharged domestic violence by defendant, and (2) substantial evidence supports the finding that defendant and T.O. had a former dating relationship within the meaning of section 1109.

We will affirm the judgment.

### BACKGROUND

#### A

T.O. met defendant in December 2007 and dated him "a couple times" in January 2008. The couple dated for less than a month, but they had a sexual relationship while they dated. T.O. fell in love with defendant, tattooed his name on her wedding ring finger, and at one point planned to live with him. She placed his name on the utilities for her home to help him establish residency. T.O. considered defendant her boyfriend, and defendant said he considered T.O. his girlfriend when they were together. T.O. "broke up" with defendant in 2008.

Defendant called T.O. in 2009. At the time, T.O. believed someone was hacking into her e-mail account, intercepting her telephone calls and possibly breaking into her home. T.O. suspected defendant and his former girlfriend M.W. were responsible.

---

[1] Undesignated statutory references are to the Evidence Code.

According to T.O., defendant said M.W. hacked into T.O.'s e-mail account and stole T.O.'s personal identification information. Defendant said he had evidence showing what M.W. did and he offered to show T.O. the evidence. T.O. agreed to let defendant help her.

Defendant stayed with T.O. at her apartment for two nights. With T.O.'s permission, defendant's girlfriend Courtney B. also stayed with T.O. During that time defendant used T.O.'s computer but he did not produce the promised information.

T.O. realized defendant was not there to help her when she found that he had left his e-mail open on her computer. She discovered naked photos of M.W. According to Courtney, T.O. accused defendant of bringing M.W. to T.O.'s house when T.O. was not there. T.O. also accused defendant of stealing from her and collaborating with M.W. against her. T.O. told defendant to leave. Defendant and Courtney left T.O.'s apartment.

The next day, T.O. was getting out of the shower shortly before 6:00 p.m. when she heard a knock at her bedroom window. She then heard a loud pounding at her front door. T.O. opened the door but did not see anyone. T.O. quickly closed the door and returned inside to get dressed.

T.O. felt something brush against her back when she reached the bathroom door. She turned and saw defendant. Defendant asked where his wallet was. T.O. told defendant to leave. Defendant responded that he was not leaving. When T.O. said she was going to call 911, defendant replied that he had already called 911.

Defendant hit T.O. on the back of her head when she ran to the bathroom. T.O. fell to the ground and lost consciousness. When she regained consciousness, defendant was beating her and swinging her body around like a rag doll. Defendant beat T.O.'s face with a closed fist possibly 25 times. T.O. tried to hit defendant back but defendant threw T.O. to the ground. He took the top of the garbage can from the bathroom and hit T.O.'s face, causing a gash above her eye. He also used a wood shelf from the bathroom to hit T.O.'s back. T.O. fell into the bathtub, pulling the shower curtain down in the

3

process. Defendant hit T.O.'s sides, legs and kneecap with the shower curtain rod. He then stabbed T.O. through her knee with the rod. T.O. screamed for defendant to stop. Defendant stomped on T.O.'s face with his foot and grabbed the back of T.O.'s hair, twisting her head back and forth as if trying to break her neck. Defendant released T.O. when she pretended to be dead. He took T.O.'s purse as he left the bathroom. T.O. screamed for help. A neighbor called 911.

T.O. had injuries to her face, eye, ribs, arm, back, leg and knee. She was stabbed at her knee joint and required surgery. She had a cut above her right eye that required sutures. She stayed in the hospital for three days. At the time of the trial, she had scars from her injuries.

Someone visiting T.O.'s neighbor saw defendant at T.O.'s home prior to the assault. Defendant was wearing gloves and a black leather jacket. The witness saw defendant knock on T.O.'s front door. When no one came to the door, defendant walked to the side of T.O.'s apartment and looked through a window. Defendant left and returned more than once. Police found a black leather jacket among defendant's possessions when he was arrested.

B

Pursuant to section 1109 and over defendant's objection, the trial court admitted evidence that defendant assaulted M.W. on December 14, 2004, and August 25, 2007.

M.W. testified at the trial. She said she and defendant began a relationship in 2002. They had a child in 2006 and stopped dating in February 2007.

On December 14, 2004, defendant and M.W. argued at her condo because she believed he stole her money. Defendant got on top of M.W., put his forearm on her neck and choked her. M.W. nearly lost consciousness. Defendant kicked M.W. repeatedly, punched her, and pulled out "chunks" of her hair.

On August 25, 2007, defendant showed up at M.W.'s house, entering the property through a gate leading into the side yard. Defendant surprised M.W. in the garage. He

4

said, "Where the F were you last night?"  M.W. tried to run but defendant tackled her inside the house.  Defendant held M.W.'s neck with both of his hands and held M.W. down.  He bit M.W.'s lip, drawing blood.  He checked the call history on M.W.'s phone and threw the phone against the wall, shattering it.  M.W. tried to run but defendant tackled her again.  M.W. begged defendant to stop.  He kicked her several times on her side with his work boots.  Defendant asked where his son was.  M.W. answered that the boy was asleep upstairs and to leave the boy alone.  M.W. ran outside and screamed for help.  Defendant said "Scream all you want.  No one can hear you."  Defendant left, taking M.W.'s diaper bag, which looked like her purse.

It was stipulated that defendant pleaded guilty to violating Penal Code section 273.5, subdivision (a) (corporal injury on the mother of the offender's child) on August 21, 2008.

C

In the instant case, the jury convicted defendant of attempted murder (Pen. Code, §§ 664/187, subd. (a) -- count one), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1) -- count two), and battery causing serious bodily injury (Pen. Code, § 243, subd. (d) -- count three).  The jury found true the allegation that defendant personally inflicted great bodily injury on T.O. when he committed the crimes charged in counts one and two.  (Pen. Code, § 12022.7, subd. (a).)  The jury acquitted defendant of the count four robbery charge.  (Pen. Code, § 211.)

After a bench trial, the trial court found true the allegation that defendant had two prior strike convictions and it denied his motion to dismiss one of the prior strikes. Combined with sentences in two cases involving probation violations, the trial court sentenced defendant to a determinate term of eight years four months and an indeterminate term of 27 years to life.

5

I

Defendant contends the trial court erred in admitting the uncharged domestic violence evidence under section 1109 because defendant's relationship with M.W. is vastly different from defendant's relationship with T.O., and there was a serious risk the jury would improperly conclude defendant dodged appropriate punishment for his offenses against M.W.

Section 1109 provides that when a defendant is accused of an offense involving domestic violence, evidence that the defendant committed other uncharged domestic violence is admissible unless precluded under section 352. (§ 1109, subd. (a)(1).) Evidence of other domestic violence is admitted to show the defendant has a propensity to commit acts of domestic violence. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232.) Section 1109 is an exception to the general rule, stated in section 1101, that evidence of a person's character or trait, including evidence of specific instances of conduct, is inadmissible when offered to prove his or her conduct on a specified occasion.

Courts have held that admitting evidence of prior domestic violence to show a propensity to commit the charged domestic violence offense does not violate due process of law because section 1109 affords the defendant substantial protections. (See, e.g., *People v. Johnson* (2000) 77 Cal.App.4th 410, 417-420; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1029.) In particular, the statute allows the trial court to exclude unduly prejudicial evidence under section 352. (§ 1109, subd. (a); *People v. Johnson, supra,* 77 Cal.App.4th at p. 420.) The trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (§§ 352, 1109, subd. (a).)

The weighing process under section 352 requires consideration of the unique facts and issues of each case, rather than the mechanical application of automatic rules.

(*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)  But consistent with the legislative intent behind section 1109, " ' "[t]he principal factor affecting the probative value of an uncharged act [of domestic violence] is its similarity to the charged offense." ' "  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)  Other factors relevant to the trial court's consideration include whether the evidence of the uncharged act of domestic violence comes from an independent source, which reduces the danger of fabrication; the recency or remoteness of the uncharged offense; whether the evidence would unduly confuse the issues; whether presentation of the evidence would consume inordinate time at the trial; and whether the evidence of uncharged conduct is inflammatory when compared with the facts of the charged offense.  (*Id.* at pp. 533-535; *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119-1120.)

A trial court need not expressly weigh prejudice against probative value or even expressly state it has done so when making a section 352 determination.  (*People v. Williams* (1997) 16 Cal.4th 153, 213.)  All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under section 352.  (*Ibid.*)  We will not disturb the trial court's exercise of discretion except upon a showing that its decision is arbitrary, capricious and patently absurd.  (*People v. Brown, supra,* 192 Cal.App.4th at p. 1233; *People v. Jennings*, *supra*, 81 Cal.App.4th at p. 1314.)

Here, although defendant had a long-term relationship and a child with M.W. whereas he dated T.O. for less than a month, the circumstances of the domestic violence against M.W. and T.O. are similar.  Defendant attacked M.W. in 2007 and T.O. in 2009 after he was no longer in a relationship with them.  He surprised both women in their homes.  He expressed anger against the women before using his hands and feet to choke, push, hit or kick them.  Defendant appeared to know that M.W.'s neighbors were not home when he attacked M.W.  He indicated to M.W. that it was useless to scream for help because the neighbors were not home to hear her screams.  There was also evidence of preparation prior to the attack against T.O.  Defendant went to T.O.'s home when she

7

was apparently not there and, wearing gloves, he looked inside through a window. In addition, just prior to attacking T.O., defendant said he already called 911, suggesting it was useless for T.O. to call for help. Regarding the 2004 assault against M.W., defendant reacted violently when M.W. accused him of stealing. T.O. likewise accused defendant of stealing. She called defendant a liar and told him to leave. In all three incidents, defendant reacted with violence toward the women. He bit, choked, punched and/or kicked M.W. He retaliated against T.O. by brutally beating, kicking and stabbing her. The similarities between the attack against T.O. and the attacks against M.W. make the uncharged incidents probative of defendant's disposition to assault women with whom he had an intimate relationship when he is angry with them. (*People v. Johnson, supra*, 185 Cal.App.4th at pp. 532-533.) As the trial court noted, this was the type of evidence the Legislature contemplated was particularly probative in a domestic violence case when it enacted section 1109.

The prior acts of domestic violence occurred less than five years before the charged offenses. The section 1109 evidence was, therefore, not too remote to be probative. (*People v. Rucker, supra,* 126 Cal.App.4th at p. 1120.) With regard to whether the uncharged acts of domestic violence were more inflammatory than the evidence concerning the charged offenses, while M.W. suffered serious injuries as a result of defendant's attacks, the injuries defendant inflicted on T.O. were more serious. Defendant continued to violently beat and choke T.O. until it appeared T.O. was dead.

Additionally, the trial court limited the prior domestic violence evidence to two incidents, not allowing other evidence of abuse against M.W. The evidence regarding the 2004 and 2007 incidents was straightforward and took up only 12 pages in the reporter's transcript. No contrary evidence was presented. Thus, there is no reasonable probability that the uncharged domestic violence evidence confused the jury.

M.W. testified about the 2007 and 2004 incidents, and defendant had an opportunity to cross-examine her and challenge her credibility. There is no indication the

8

jury would have wanted to punish defendant for his conduct against M.W. or that it believed he had escaped punishment for his 2007 act of domestic violence. Defendant pleaded no contest to corporal injury of the mother of his child in relation to the 2007 assault. The jury heard that defendant was incarcerated in 2008.

With regard to the 2004 assault, defense counsel did not dispute that defendant committed that assault. There is no indication defendant was prosecuted or punished for his conduct.[2] But even if this factor favored exclusion, the other factors support the trial court's decision to admit the evidence of prior domestic violence by defendant.

While prior domestic violence evidence may have been damaging to defendant, the fact that evidence is damaging to the defendant does not make it unduly prejudicial. (*People v. Johnson, supra*, 185 Cal.App.4th at p. 534.) The Legislature has determined that in domestic violence cases, evidence of other domestic violence by the defendant may be admissible to show propensity to commit domestic violence. (*People v. Johnson*, *supra*, 77 Cal.App.4th at pp. 419-420.) The trial court did not abuse its discretion in admitting the evidence involving M.W.

II

Defendant also contends section 1109 does not apply because defendant and T.O. did not have a dating relationship.

The term "domestic violence" in section 1109 includes abuse committed against a person with whom the defendant is having or has had a dating relationship. (Pen. Code, § 13700, subd. (b); Fam. Code, § 6211, subd. (c); § 1109, subd. (d)(3).) "Dating relationship" includes a range of relationships. (*People v. Rucker, supra,* 126 Cal.App.4th at p. 1116.) It does not require a " 'serious courtship,' " an " 'increasingly exclusive interest,' " or a " 'shared expectation of growth.' " (*Id.* at

---

[2] The fact that an act did not lead to criminal charges does not preclude the application of section 1109. (*People v. Brown, supra,* 192 Cal.App.4th at p. 1233.)

9

p. 1117.) A relatively new dating relationship can be a "dating relationship" under section 1109. (*Id.* at p. 1116.) "The Legislature could reasonably conclude dating relationships, even when new, have unique emotional and privacy aspects that do not exist in other social or business relationships and those aspects may lead to domestic violence early in a relationship." (*Ibid.*) But a " 'casual relationship or an ordinary fraternization between [two] individuals in a business or social context' " is not a "dating relationship." (*Id.* at p. 1117, fn. omitted.)

Substantial evidence supports the finding that defendant was in a dating relationship with T.O. Although T.O. and defendant dated for less than a month, T.O. fell in love with defendant. She considered defendant her boyfriend. And defendant told T.O. he considered them to have a boyfriend/girlfriend relationship. Defendant and T.O. "broke up." They had a sexual relationship while they were dating. T.O. contemplated moving in with defendant. She even tattooed defendant's name on her wedding ring finger.

While their relationship was short-lived, it was a dating relationship when defendant and T.O. were together, rather than a casual social relationship. T.O. was a person with whom defendant has had a dating relationship within the meaning of section 1109.

## DISPOSITION

The judgment is affirmed.

_____MAURO_____, J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.

10