Filed 3/23/15  P. v. Guillen CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO JAVIER GUILLEN,<br><br>    Defendant and Appellant. | C075233<br><br>(Super. Ct. No. 13F01716) |

A jury found defendant Francisco Javier Guillen guilty of spousal abuse resulting in a traumatic condition (Pen. Code, §§ 273.5, subd. (a) & 1022.7, subd. (e)), making a criminal threat (*id*., § 422), (misdemeanor) child abuse (*id*., § 273a, subd. (b)), and (misdemeanor) violating a court order (*id*., § 166, subd. (c)(1)).  The trial court sentenced defendant to five years in state prison.

1

On appeal, defendant contends the trial court erred in admitting evidence of his 2005 and 2010 incidents of domestic violence against the victim.  He adds that there are errors in the abstract of judgment.  We disagree with his first claim but agree with his second, and will direct correction of the abstract of judgment.

## FACTUAL AND PROCEDURAL HISTORY

*Counts One through Five -- 2013*

On March 14, 2013, around 5:00 p.m., the defendant's wife, C.G. (victim), came home from work.  She walked through the garage, where she found defendant drinking beer.  Defendant "looked like . . . [he was] about ready to want to fight."

The victim went inside and lay down on the bed in the room she shared with defendant.  Defendant soon followed with their nine-year-old son, N.G.  Defendant and N.G. stood at the foot of the bed and defendant told the victim to make their son something to eat.  The victim did not get up from the bed and defendant and she began to argue.  Defendant and N.G. ultimately left the room; the victim stayed in the bedroom and locked the door.  Defendant demanded she let him into the room so he could get his clothes because he wanted to leave.

The victim opened the door "a little" in order to give defendant some of his clothes, but defendant pushed the door open, pushing her backward.  Once inside the room, defendant started hitting her.  The victim "threw [herself] on the bed" as defendant hit her in the head and "all over [her] body."  Defendant climbed on top of the victim, who was face down on the bed, and continued to beat her.  Every time defendant hit her, defendant would "tell [her] to die."  The victim thought she was going to die.

N.G., who was again in the room, grabbed defendant by his shirt and tried to pull him off the victim.  N.G. told defendant to leave her alone but defendant continued the beating.  N.G. left the room and then returned holding a kitchen knife.  The victim was still on the floor.  Defendant said to N.G.:  "Give me that knife.  I'm going to kill her with it."  Defendant then took the knife from N.G. and the victim grabbed her cell phone to

2

call the police. Holding the knife, defendant told her that she was going to die. The victim believed she was going to die "at that moment."

Ultimately, after a neighbor interceded, defendant left the house on N.G.'s bicycle. Police officers soon arrived and confirmed the existence of a domestic violence restraining order. They soon found defendant riding N.G.'s bicycle. Defendant pointed at his house and told the officers, "I don't live there." One of the officers told defendant to step off the bicycle and put his hands on top of his head. Instead, defendant put his hand in his pocket. The officer then took defendant down to the ground and into custody.

For this conduct, the jury found defendant guilty of spousal abuse resulting in a traumatic condition (count one), criminal threats (count two), child abuse (count three), and violating a court order (count five). The jury failed to reach a verdict on count four--resisting a police officer.

*Counts Six and Seven -- 2012*

Nearly a year earlier, on May 22, 2012, the victim was asleep in a bedroom separate from defendant's when defendant forced open her bedroom door, grabbed her cell phone, and began reading her text messages. Defendant became angry because there were text messages to her from a male friend. The victim got out of bed and defendant kicked her in the leg, just below the knee. Defendant then told her that she had 24 hours to get out of the house and walked out of the room.

The victim soon spoke with a police officer who observed a bruise on her leg where defendant had kicked her. The officer also learned there was a restraining order in effect between defendant and the victim; he went to their home to find defendant but defendant was not there.

The jury found defendant not guilty on the charges of spousal abuse (count six) and violating a court order (count seven) related to this conduct.

3

*Additional Incidents in 2005 and 2010*

The trial court allowed the victim to testify regarding two prior incidents of domestic violence between her and defendant occurring in 2005 and 2010, both of which resulted in criminal convictions.

On or about October 9, 2005, defendant became angry with the victim when she brought home for N.G. a toy car she found lying in the street. That day, she and N.G. were both sick; the victim was lying in bed and defendant was outside working on his car and drinking. Defendant came inside the house and told her to get up and get rid of the toy car. When she did not get up, defendant took off his belt and began to beat her with it, calling her lazy.

Defendant was later arrested and was ultimately convicted of misdemeanor assault in violation of Penal Code section 240.

On or about September 10, 2010, the victim returned home from work to find defendant drunk; defendant's brother Oscar was there as well. She began to cook dinner while she talked to Oscar about her brother's work. Defendant became "very angry." He got up from the couch, walked into the kitchen, and punched her twice: once in the mouth and once in the chest. While he was hitting her, defendant asked her if Oscar "was [her] man." The victim ran into another room and called the police.

Defendant later pleaded guilty to charges filed against him as a result of the assault.

*Pre-Trial Motions, Trial, Judgment, and Sentencing*

The People moved in limine to introduce the 2005 and 2010 incidents. The trial court granted the motion, stating: "Well, I have read the papers on the [Evidence Code section] 1109 issue. The Court is likely to grant the request to use the evidence with regard to 1109. It does seem to fit the criteria of 1109. It is relatively recent, one is two years earlier, one is seven years earlier, so we do see a pattern." Following a brief argument by counsel, the court continued, "the Court is going to allow the prior conduct

4

to be admitted for purposes of 1109 evidence. The Court has considered it both in the context of 1109 and in the context of Evidence Code section 352. The Court does not believe that the probative value is outweighed by any substantial prejudicial effect."

At trial, defendant presented no evidence. At the conclusion of the trial, the court instructed the jury pursuant to CALCRIM No. 852 on the limited use of the prior acts evidence, stating it was relevant to show defendant's disposition to commit domestic violence, but was only one factor for the jury to consider and was not sufficient to prove guilt.

## DISCUSSION

### I

### *Admission of 2005 and 2010 Incidents*

Defendant first contends the trial court abused its discretion in admitting the 2005 and 2010 incidents, and accordingly denied defendant his federal and state rights to due process. He claims the probative value of the evidence was diminished because the victim in both cases provided the evidence, the 2005 incident was too remote in time, and the evidence was cumulative. Defendant further claims that because he was charged with seven crimes, allowing in evidence of two prior crimes was "fundamentally gratuitous and prejudicial," and because the prior criminal acts were "so similar" to those charged here, the evidence necessarily confused the jury. Finally, defendant claims the trial court failed to comply with Evidence Code section 352,[1] arguing that the court "did not exercise the required 'discerning care,' when ruling on this critical issue." We are not persuaded.

---

[1] Further undesignated statutory references are to the Evidence Code.

5

A. *The Law*

Section 1109 provides that when a defendant is accused of an offense involving domestic violence, evidence that the defendant committed other uncharged domestic violence is admissible unless precluded under section 352. (§ 1109, subd. (a)(1).) Evidence of other acts of domestic violence is admissible to show a defendant has a propensity to commit acts of domestic violence. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232.)

Admitting evidence of prior domestic violence to show a propensity to commit the charged domestic violence offense does not violate due process of law because section 1109 affords the defendant substantial protections. (See, e.g., *People v. Johnson* (2000) 77 Cal.App.4th 410, 417-420; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1029.) In particular, the statute allows the trial court to exclude unduly prejudicial evidence under section 352. (§ 1109, subd. (a); *People v. Johnson*, *supra*, at p. 420.) The trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (§§ 352, 1109, subd. (a).)

The weighing process under section 352 requires consideration of the unique facts and issues of each case, rather than the mechanical application of automatic rules. (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) But consistent with the legislative intent behind section 1109, " ' "[t]he principal factor affecting the probative value of an uncharged act [of domestic violence] is its similarity to the charged offense." ' " (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.) Other factors relevant to the trial court's consideration include whether the evidence of the uncharged act of domestic violence comes from an independent source (which reduces the danger of fabrication), the recency or remoteness of the uncharged offense, whether the evidence would unduly confuse the issues, whether presentation of the evidence would consume

inordinate time at the trial, and whether the evidence of uncharged conduct is inflammatory when compared with the facts of the charged offense. (*Id.* at pp. 533-535; *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119-1120.)

We will not disturb the trial court's exercise of discretion except upon a showing that its decision is arbitrary, capricious, and patently absurd. (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233; *People v. Jennings, supra*, 81 Cal.App.4th at p. 1314.)

B. *Analysis*

The prior acts here were strikingly similar to the charged acts, thus making their probative value great. (See *People v. Johnson, supra*, 185 Cal.App.4th at p. 532; see also *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 ["The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense"].) In the 2005 and 2010 incidents, as here, defendant and the victim were at home, defendant was drunk, he became angry with the victim, and then he beat her.

There is little in the record to show the probative value of defendant's prior acts was diminished by any other factors. The priors were not so remote in time as to diminish their probative value, particularly when considered in context. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404-405 [uncharged conduct occurring 12 years prior to trial did not lessen probative value in the context of that case], superseded by statute as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (finding *Ewoldt*'s "similarity analysis" was superseded by enactment of section 1108).) The evidence showed that defendant abused in the victim in 2005 and 2010 before he abused her in 2012 and 2013, which gave rise to the charges here. The evidence thus established a pattern of domestic violence that began seven years ago and continued despite defendant's convictions. Defendant's convictions for these prior acts of domestic violence also diminished the possibility of fabrication. (See *Ewoldt*, at p. 404 [probative value of uncharged conduct is increased if the source is independent of evidence of the

7

charged offense].)  And the evidence of defendant's prior acts of domestic violence was not cumulative, rather it showed the pattern of increasing violence directed at the victim.[2]

The evidence also was not unduly prejudicial.[3]  The prior acts of violence were actually *less* serious than those charged here, so they were not inflammatory.  (*People v. Tran* (2011) 51 Cal.4th 1040, 1047 [potential for prejudice is decreased "when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense"].)  The defendant was convicted on criminal charges related to the prior acts of domestic violence, which obviated any concern that the jury would seek to punish him now for his prior criminal conduct.  (*Ibid.* [prejudice is increased if the uncharged acts did not result in a criminal conviction, increased the chance jury will want to punish defendant for prior abuse].)  The *actual* lack of prejudice is further evidenced by the fact that the jury *acquitted* defendant on multiple similar charges.

Defendant nevertheless contends the jury was confused by the evidence of defendant's prior acts of domestic violence because they were "so similar" to the acts charged here "the jury must have wondered why they were placed in evidence." Defendant points to the jury's questions during deliberations as evidence the jurors were confused about how to handle the evidence of his prior domestic violence; he argues the court's limiting instruction did not alleviate their confusion.  We disagree.

---

[2]  Defendant argues without authority that this evidence was cumulative because the prior acts were so similar to the current charges; we reject this argument as specious.

[3]  Defendant contends without authority that allowing the prosecution to present evidence of *two* prior acts was "fundamentally gratuitous and prejudicial."  This claim is directly counter to the Legislative intent in allowing prior acts of domestic violence to be admitted because criminal prosecution is one of the four factors which may "interrupt the escalating pattern of domestic violence . . . ."  (See *People v. Johnson, supra*, 77 Cal.App.4th at p. 419, quoting Assem. Com. Rep. on Public Safety (Jun. 25, 1996) pp. 3-4.)

8

The jury's questions reveal careful consideration of testimony and potential confusion regarding the law related to resisting an officer (count four, later dismissed). They do not evidence confusion related to defendant's prior acts of domestic violence. Moreover, we presume the jurors understood and followed the court's instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

Finally, the trial court expressly stated on the record that it "read the papers on the 1109 issue . . .," and after allowing the attorneys to argue, found "the probative value is outweighed by any substantial prejudicial effect." It is, therefore, evident that the trial court understood and fulfilled its responsibilities under section 352. (*People v. Williams* (1997) 16 Cal.4th 153, 213.) We find no error.

II

*Errors in the Abstract*

Defendant next contends the abstract of judgment incorrectly includes two unauthorized fines; the People agree and so do we. At sentencing, the trial court properly imposed $160 in court operations assessment (Pen. Code, § 1465.8(a)(1)) and a $120 court facilities assessment (Gov. Code, § 70373). The abstract of judgment, however, incorrectly lists the court operations assessment at $200 and the court facilities assessment at $150. "An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Appellate courts may order correction of abstracts of judgment that do not accurately reflect the sentencing court's oral pronouncement. (*Ibid.*) We shall direct the trial court to correct the abstract of judgment.

9

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

       DUARTE       , J.


We concur:


     ROBIE       , Acting P. J.


     HOCH       , J.