Filed 5/25/16  P. v. Dyson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C073254 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF12-209) |
| v. | |
| TYRONE LAWRENCE DYSON, | |
| Defendant and Appellant. | |

Over the course of several days, defendant tortured and sexually assaulted Heather.  Convicted of numerous crimes and sentenced to long determinate and indeterminate terms in state prison, defendant appeals.  He contends:  (1) admission of prior sexual and domestic violence offenses violated his due process rights, (2) he was improperly impeached with a prior conviction, (3) a jury instruction concerning flight as consciousness of guilt was not supported by the evidence, (4) the court improperly failed to instruct the jury sua sponte on expert testimony, (5) cumulative error requires reversal,

1

(6) he is entitled to one additional day of presentence conduct credit, (7) the abstract of judgment must be amended to specify the allocation of sex offender fines, and (8) there is a clerical error in the abstract of judgment.

We agree that defendant is entitled to one additional day of presentence conduct credit, but the remaining contentions concerning the judgment are without merit. We also agree that the trial court must amend the abstract of judgment to specify the allocation of sex offender fines and correct the clerical error. Therefore, we modify and affirm the judgment and remand for amendment and correction of the abstract of judgment.

BACKGROUND

Defendant's contentions on appeal do not require a detailed recitation of the facts. We therefore provide this brief summary.

As we explain later, defendant was tried twice in this case. However, his contentions on appeal do not require us to provide an explanation as to how the evidence in the two trials differed, except as set forth in the discussion, below.

Defendant and Heather lived together in a residence as boyfriend and girlfriend. They spent much of their time high on methamphetamine. One morning, defendant woke up Heather by kicking her in the ribs. He accused her of infidelity and told her she would not live through the day. Heather left, but she returned eight or nine days later. Soon after her return, defendant again began accusing her of infidelity. Defendant spent hours listening to a recording he had made with his phone, and he claimed that he could hear Heather in the recording having relations with other men. Over the next several days, defendant assaulted and threatened Heather, telling her that he was the jury, the judge, and the court and he was going to beat her to death because she was convicted. Defendant punched and slapped Heather repeatedly, threatened to sexually assault her with a broomstick, hit her with the broomstick, forced her to have intercourse while he held a knife and wore a condom, cut her leg and placed the knife on her clitoris,

2

threatened to shove the knife into her vagina, threatened to submit her to prostitution, sexually assaulted her with a vibrator, forced her to orally copulate him, threatened her family, stabbed a hole in the wall, stabbed the bed around her, pointed a BB gun at her and threatened to shoot her, and choked her.

After defendant had not slept for several days, he finally fell asleep, and Heather escaped. She went to a neighbor's house and called 911. Yuba County Sheriff's Department deputies responded and arrested defendant.

Defendant was tried by jury on nine counts associated with Heather. The jury found defendant not guilty of felony false imprisonment and willful infliction of corporal injury on a cohabitant, and the jury found defendant guilty of misdemeanor false imprisonment (as a lesser included offense of felony false imprisonment), battery on a cohabitant (as a lesser included offense of willful infliction of corporal injury on a cohabitant), and criminal threats. On the remaining six counts, however, the jury was unable to reach a verdict, so the trial court declared a mistrial as to those counts.

The prosecution retried the remaining counts against defendant before a new jury. This jury found defendant guilty of torture, rape, forcible sexual penetration, forcible oral copulation, assault with a deadly weapon, and assault by means of force likely to produce great bodily injury. As to various counts, the jury found that the defendant used a knife, a BB gun, and a broomstick and that he personally inflicted great bodily injury. Defendant admitted having a prior conviction for second degree robbery.

The trial court sentenced defendant to consecutive determinate terms of 16 years each for rape (Pen. Code, § 261, subd. (a)(2)), forcible sexual penetration (Pen. Code, § 289, subd. (a)(1)), and forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A)). The court imposed an additional 10 years each for being armed with a deadly weapon on the rape and forcible sexual penetration counts (Pen. Code, § 12022.3, subd. (a)), as well as an additional five years for having a prior serious felony conviction (Pen. Code, § 667,

subd. (a)(1)). The remaining counts and enhancements were stayed under Penal Code section 654. Therefore, the aggregate determinate term imposed was 73 years.

The court also imposed a consecutive indeterminate life term for torture. (Pen. Code, §§ 206, 206.1.) As to the indeterminate term, the court (1) doubled the minimum parole eligibility to 14 years because of the prior strike conviction (Pen. Code, §§ 667, subd. (e)(1)), 1170.12, subd. (c)(1)), (2) added one year for knife use (Pen. Code, § 12022, subd. (b)(1)), and (3) added five years for his prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)). As a result, defendant's minimum parole eligibility for the life term is 20 years.

DISCUSSION

I

*Evidence Code Sections 1108 and 1109*

Defendant contends that evidence of his prior sexual offenses (Evid. Code, § 1108) and domestic violence (Evid. Code, § 1109) against Rosie Q. should have been excluded at his second trial. He claims that the introduction of the evidence violated his due process rights. To the contrary, admission of the evidence was proper.

"In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) "Nearly every published opinion interpreting [Evidence Code] section 1108 (including some from this court) has recognized that this provision allows, when proper, evidence of prior uncharged sexual offenses to prove propensity. [Citations.]" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160.)

Similarly, Evidence Code section 1109 allows evidence showing a propensity for domestic violence: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other

4

domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1109, subd. (a)(1).)

After the first trial had ended, the prosecutor received information that defendant had previously committed similar crimes against another victim. In a motion to admit the evidence, the prosecutor made an offer of proof: Rosie Q. moved in with defendant in 2008. Soon thereafter, defendant began acting violently toward her and accusing her of infidelity. He beat her in the arms, legs, and head with a wooden closet rod; recorded her with his cell phone and listened to the recordings to hear what she had been doing; and accused her of having sex with other people. During one incident, he forced her to kneel for several hours while he tried to force her to admit cheating. Another time, when her children came to visit, he put a rifle in her mouth and told her to be quiet until they left. He made her suck the end of the rifle as if performing oral sex. When defendant beat up Rosie Q., he told her that he was the "judge, jury, and executioner." He liked having knives, and he stabbed the bed around her while she was sitting on the bed. Defendant constantly used methamphetamine and supported himself by selling drugs. He always used a condom when they had sex, and defendant encouraged her to engage in prostitution, which she never did.

The trial court found that the evidence relating to Rosie Q. showed intent, motive, a common scheme or plan, and absence of mistake, so that it was admissible under Evidence Code section 1101, subdivision (b). The court also found that the prior conduct was not more serious than the charged crimes and not remote, so that it was admissible under Evidence Code sections 1108 and 1109 as prior sexual offenses and prior domestic violence, respectively. Finally, the court determined that any prejudicial effect of the evidence did not substantially outweigh its probative value and that the evidence would not unduly consume trial time under Evidence Code section 352.

5

The testimony of Rosie Q. was substantially consistent with the prosecutor's offer of proof. And the trial court properly instructed the jury concerning use of such evidence under Evidence Code sections 1101, 1108, and 1109.

Defendant implicitly concedes that the trial court properly admitted Rosie Q.'s testimony under Evidence Code section 1101 because he does not contend otherwise. Instead, he claims, in his words, "the trial court abused its discretion in allowing the jury to consider Rosie's testimony as evidence of his propensity to commit domestic violence and sex offenses pursuant to Evidence Code sections 1108 and 1109."

Defendant contends that the trial court abused its discretion in admitting the evidence under Evidence Code sections 1108 and 1109 because (1) there were "some noticeable differences between" the testimony of Rosie and Heather, (2) there was a "probability of confusion" that the jury was punishing defendant for the acts committed against Rosie, and (3) admission of propensity evidence violated his due process rights.

Concerning the differences in defendant's offenses against Rosie and Heather, there is no requirement of similarity for admission of evidence under Evidence Code sections 1108 and 1109, other than that they must be sexual offenses or domestic violence. (See *People v. Soto* (1998) 64 Cal.App.4th 966, 984.) In any event, defendant's prior offenses against Rosie were remarkably similar to the offenses against Heather.

Concerning the probability of confusion, defendant contends that, because the record reveals that defendant was not punished for his offenses against Rosie, there is a probability that the jury felt it should punish defendant for those offenses. But defendant does not provide a citation to the record showing that the jury was informed that defendant was not punished for the sexual offenses and domestic violence committed against Rosie. Therefore, his contention fails.

And concerning his contention that admission of propensity evidence violated his due process rights, the California Supreme Court has decided to the contrary, as

6

defendant acknowledges. (*People v. Falsetta* (1999) 21 Cal.4th 903; *People v. Johnson* (2000) 77 Cal.App.4th 410; see also *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

## II

### *Impeachment with Prior Conviction*

Defendant was convicted of robbery and possession of a controlled substance in 1993. In 2008, he was convicted of possession of cocaine base for sale. And in 2011, defendant violated probation on the 2008 conviction. Over defendant's objection, the trial court permitted the prosecution to impeach defendant with his 1993 robbery and the 2008 possession of cocaine base for sale convictions. Although the robbery conviction was somewhat remote, the trial court allowed its use in both trials because defendant had not remained crime free since then.

On appeal, defendant contends the trial court abused its discretion in admitting the 1993 robbery conviction as impeachment, arguing that prejudice from such use substantially outweighed the probative value concerning his credibility. We disagree.

Article I, section 28, subdivision (f)(4) of the California Constitution authorizes use of prior convictions for impeachment purposes: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." Admission of prior conviction evidence for impeachment purposes is subject to the trial court's exercise of discretion under Evidence Code section 352. (*People v. Castro* (1985) 38 Cal.3d 301, 306.) " 'No . . . defendant who elects to testify in his own behalf is entitled to a false aura of veracity.' [Citation.]" (*People v. Tamborrino* (1989) 215 Cal.App.3d 575, 590.)

Robbery is a crime of moral turpitude. (*People v. Gray* (2007) 158 Cal.App.4th 635, 641.) And defendant so concedes.

Under the Evidence Code section 352 analysis of whether the prejudicial effect substantially outweighs the probative value of the evidence, "[i]f a prior felony conviction has been followed by a legally blameless life, remoteness is important. [Citation.] Thus, the court may consider defendant's conduct subsequent to the prior conviction. [Citations.]" (*People v. Tamborrino, supra*, 215 Cal.App.3d at p. 590.) "[C]onvictions remote in time are not automatically inadmissible for impeachment purposes. Even a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior. [Citations.]" (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925-926.)

"A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Defendant contends that admission of the robbery conviction was error because of the danger the jury would construe it as evidence of his propensity to commit crimes. He also claims that he lived a relatively blameless life between the 1993 robbery conviction and the current crimes.

We conclude the trial court did not abuse its discretion. The jury was properly instructed that it was allowed to consider a witness's prior conviction "only in evaluating the credibility of the witness's testimony." And the record demonstrates that defendant had not led a crime-free life between the 1993 robbery conviction and the current crimes.

III

*CALCRIM No. 372 on Flight*

The trial court instructed the jury on flight as evidence of consciousness of guilt in both trials. On appeal, defendant contends it was error to give the instructions because

8

the evidence was insufficient to support the inference of consciousness of guilt. The contention is without merit because the evidence of flight was sufficient.

Heather escaped from the house while defendant was asleep. She went to a neighbor's residence and called 911. Deputy Karen Howard was among the Yuba County Sheriff's Department deputies who responded to the scene. She concealed herself behind the back fence of the residence as other deputies approached the front door. She saw defendant come out the back door, talking on a cell phone. Defendant walked to the gate and tried to unlatch it, but it was wired shut. He then walked to the back fence and peeked over. At that point, a deputy ordered defendant to show his hands. Defendant complied and was arrested. Defendant testified that he woke up when he heard officers kicking the door. He looked out the window and saw who it was, so he walked out the back door.

Using CALCRIM No. 372, the trial court instructed the jury: "If the defendant fled or tried to flee immediately after the crime was committed, or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled, or tried to flee, cannot prove guilt by itself."

"[A] flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citations.] ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' [Citation.]" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)

Here, defendant saw the deputies and tried to escape out the back door. That he did not make it far and that he cooperated once contacted did not require the finder of fact to conclude that he was not trying to escape. Therefore, this evidence was sufficient to

9

allow the jury to reasonably infer that defendant was fleeing because he was conscious of his guilt.

However, defendant argues that the evidence was insufficient because he was talking on his cell phone, was not running, did not try to remove the wire from the gate, and did not appear to be ready to jump over the fence. Defendant's argument is not persuasive. The evidence was sufficient to show consciousness of guilt because defendant tried to avoid the deputies. The other circumstances cited by defendant went only to the weight of the evidence to show consciousness of guilt and did not preclude a flight instruction.

IV

*CALCRIM No. 332 on Expert Testimony*

An expert on sexual assault examinations testified at defendant's second trial, but the trial court did not give CALCRIM No. 332 to inform the jury on how to assess expert testimony. Defendant contends the failure to give an instruction concerning expert testimony was prejudicial error requiring reversal of the convictions in the second trial. We conclude that any error in not instructing the jury concerning expert testimony was harmless.

Patricia Daugherty testified for the prosecution. She is a physician assistant and forensic examiner for the Sutter Medical Foundation, and she examined Heather after defendant's crimes. Daugherty testified both concerning her observations (which testimony does not require the expert testimony instruction (*People v. Lynch* (1971) 14 Cal.App.3d 602, 609)) and concerning matters about which she possessed specialized knowledge as an expert (see Evid. Code, § 720, subd. (a)). In the latter category, Daugherty testified that Heather's injuries were indicative of trauma, were in the process of healing, and were consistent with Heather's description of the crimes. She also testified that the absence of vaginal injuries did not establish that Heather had not been assaulted.

10

Penal Code section 1127b requires the court to instruct sua sponte on expert testimony whenever an expert testifies in a criminal proceeding. (*People v. Reeder* (1976) 65 Cal.App.3d 235, 241.) As relevant to this case, CALCRIM No. 332 provides: "A witness was allowed to testify as an expert and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence. [¶] An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion."

Even assuming the trial court erred by not instructing the jury in the second trial concerning expert testimony, any error was harmless. Although defendant asserts the "harmless beyond a reasonable doubt" standard prescribed in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] applies, California courts employ the reasonable probability standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, to errors in failing to give a particular instruction sua sponte (*People v. Breverman* (1998) 19 Cal.4th 142, 178). Regarding defendant's claim here, " ' "the erroneous failure to instruct the jury regarding the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire cause, determines that the jury might have rendered a different verdict had the omitted instruction been given. [Citations.]" '

11

[Citations.]" (*People v. Williams* (1988) 45 Cal.3d 1268, 1320, modified on another point in *People v. Guiuan* (1998) 18 Cal.4th 558, 560-561.) We therefore apply the *Watson* standard.

Here, although the court did not instruct under CALCRIM No. 332, it instructed the jurors on how to evaluate witness testimony in CALCRIM No. 226, which told them to "judge the credibility or believability of the witnesses," applying "the same standards" to "the testimony of each witness," and to "[c]onsider the testimony of each witness and decide how much of it you believe." Regarding how to evaluate believability, the omitted instruction would have specifically referred the jury to CALCRIM No. 226. (CALCRIM No. 332 ["In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally"].) On that point, CALCRIM No. 226 directed the jurors that they could "believe all, part, or none of any witness's testimony" and "may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony," such as the reasonableness of "the testimony when you consider all the other evidence in the case." This includes the reasonableness of Daugherty's opinions concerning Heather's injuries and whether they were consistent with Heather's descriptions of the crimes.

Additionally, the court instructed the jury with CALCRIM No. 301 that one witness's testimony alone was sufficient to prove any fact but that, before the jury concluded it did, the jury must "carefully review all the evidence." And the court told the jury how to evaluate conflicting evidence under CALCRIM No. 302. Together these instructions substantially covered all of the matters required by Penal Code section 1127b and CALCRIM No. 332 and adequately equipped the jury to evaluate Daugherty's testimony. We presume the jury followed these instructions absent any contrary indication. (*People v. Gray* (2005) 37 Cal.4th 168, 217.) On this record, any error in failing to give CALCRIM No. 332 was harmless.

12

Defendant argues that the failure to instruct on expert testimony using CALCRIM No. 332 was not harmless because Daugherty's testimony supported Heather's version of the events. This is critical, asserts defendant, because the jury was never told it could disregard Daugherty's opinions if it found them unsound. Nonetheless, defendant points to no particular element of Daugherty's testimony that the jury would have reasonably rejected. Under these circumstances, it is not reasonably probable defendant would have obtained a more favorable result if the court had instructed the jury concerning expert testimony in the second trial. (*People v. Williams, supra,* 45 Cal.3d at p. 1320.)

V

*Cumulative Error*

Defendant contends that errors in his two trials cumulatively resulted in prejudice even if they did not prejudice him separately. However, because (1) we have not found multiple errors and (2) there was no prejudice even assuming error in the failure to instruct the jury in the second trial concerning expert testimony, the contention that cumulative prejudice requires reversal is without merit.

VI

*Presentence Conduct Credit*

Defendant argues, and the Attorney General agrees, that he is entitled to one more day of presentencing conduct credit than he was awarded by the trial court. We also agree.

Because defendant was convicted of violent felonies, he was entitled to no more conduct credit than 15 percent of the actual days in custody. (Pen. Code, § 2933.1.) Here, defendant served 307 days in actual presence custody, so he was entitled to 46 days of conduct credit. But the trial court awarded just 45 days of presence conduct credit.

We therefore must modify the judgment to reflect one more day of presence custody credit.

13

## VII

### *Sex Offender Fines*

Defendant argues, and the Attorney General agrees, that we must remand for amendment of the abstract of judgment because the trial court failed to separately list in the abstract of judgment each penalty assessment included in the $1,140 fine imposed under Penal Code section 290.3, which provides for a fine for commission of a crime that requires sex offender registration.  We also agree that the case must be remanded for amendment of the abstract of judgment.

At the sentencing hearing, the court stated:  "Pursuant to Penal Code section 290.3, you must pay a fine of $1,140 for Count IV."  The court then asked:  "Does Defense counsel waive a breakdown of the fines imposed pursuant to Penal Code section 290.3 . . . ?"  Counsel waived the breakdown, so the court did not provide it.  The abstract of judgment lists the $1,140 fine but also does not provide a breakdown.

As we have held before, "[a]ll fines and fees must be set forth in the abstract of judgment."  (*People v. High* (2004) 119 Cal.App.4th 1192, 1200; see also *People v. Hamed* (2013) 221 Cal.App.4th 928, 934-937 [requiring " 'a detailed recitation of all the fees, fines and penalties on the record' "].)  Failure to break down the component parts of the Penal Code section 290.3 fine is an unauthorized sentence.  (*People v. Hamed, supra,* at p. 941.)

## VIII

### *Abstract of Judgment Correction*

The abstract of judgment contains a clerical error.  On the torture conviction (count 1), the trial court sentenced defendant to life with possibility of parole.  Considering the enhancements associated with count one, the minimum parole eligibility is 20 years.  The abstract of judgment correctly reflects the sentence on count one except that the clerk checked the box next to "LIFE WITHOUT THE POSSIBILITY OF PAROLE," instead of the correct box, which reflects "LIFE WITH POSSIBILITY OF

14

PAROLE." As defendant argues, and the Attorney General agrees, this clerical error must be corrected on remand.

## DISPOSITION

The judgment is modified to add one more day of presentence conduct credit for a total of 46 days of presentence conduct credit. As modified, the judgment is affirmed. The matter is remanded to the trial court for amendment and correction of the abstract of judgment consistent with this opinion, and the trial court is directed to send the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.

      NICHOLSON     , J.

We concur:

      BLEASE     , Acting P. J.

      MAURO     , J.

15