[No. C028945. Third Dist. Jan. 5, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EDWARD JOHNSON, SR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III and IV of the DISCUSSION.

## COUNSEL

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182], our Supreme Court recently held that Evidence Code section 1108, which allows evidence of a defendant's prior sexual offenses in prosecutions for sex crimes, does not violate a defendant's right to due process of law.

In this case, following *Falsetta*, we hold that Evidence Code section 1109, which allows evidence of a defendant's prior domestic violence in a prosecution for an offense involving domestic violence, does not violate defendant's right to due process.

Defendant George Edward Johnson, Sr., appeals from a judgment following his conviction for first degree murder (Pen. Code, § 187),[1] spousal battery (§ 273.5), assault with a knife (§ 245, subd. (a)), terrorist threat (§ 422), attempted spousal rape (§ 262), and stalking (§ 646.9). Defendant contends the judgment must be reversed because his due process rights were violated by admission of prior acts evidence under Evidence Code section 1109, and instructional error. He also claims ineffective assistance of counsel.

In the published portion of the opinion we reject his constitutional challenge to Evidence Code section 1109. In the unpublished portion of the opinion, we reject defendant's remaining claims of prejudicial error. We shall therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1997, defendant was charged with the following offenses: (1) murder of his wife Linza (§ 187, subd. (a)) occurring on December 12, 1996,

---

[1]Undesignated statutory references are to the Penal Code.

a serious felony under section 1192.7, subdivision (c)(1), with personal use of a firearm (§ 12022.5, subd. (a)); (2) spousal battery (§ 273.5, subd. (a)) on September 29, 1996; (3) assault with a knife (§ 245, subd. (a)(1)) on September 29, 1996, with personal use of a knife (§ 12022, subd. (b)); (4) terrorist threat (§ 422) on September 29, 1996; (5) attempted spousal rape (§§ 262, subd. (a), 664) on September 29, 1996; (6) terrorist threat (§ 422) on October 11, 1996; (7) assault with a deadly weapon, an automobile (§ 245, subd. (a)(1)) on November 9, 1996; and (8) stalking (§ 646.9, subd. (a)) from October 1996, through December 12, 1996. It was also alleged defendant had a prior conviction for assault with a firearm (§ 245, former subd. (a)(1)), with personal use of a firearm (§ 12022.5) occurring on September 7, 1979, within the meaning of section 667, subdivisions (a) and (b)-(i). It was also alleged defendant had two prior convictions for spousal abuse (§ 273.5, subd. (a)) on October 31, 1990, and February 4, 1987. It was also alleged defendant was released on bail at the time he committed counts 1, 6, 7 and 8. (§ 12022.1, subd. (b).)

The following evidence was adduced at trial:

In September 1996, defendant and his wife Linza were in the process of separating (as prelude to divorce proceedings commenced in November 1996). On September 29, 1996 (counts 2-5), defendant and Linza had a fight. Their son George (age 22 at the time of trial) found Linza crying and limping when he came home that morning. The son took her to a doctor, who treated her for a contusion. The next day, the police arrived (having been called by the son) and took a statement from Linza that defendant was drunk and angry at her for not attending a cousin's party. They argued, he called her a tramp, pushed her to the floor, grabbed her by the hair, and held a knife to her neck. Still holding the knife, he ordered her to strip naked. She complied. Defendant undressed, displaying an erection, and got on top of Linza. She spit on his face and pushed him off of her. While the police were taking Linza's statement, defendant arrived and began arguing with Linza. He was arrested. A friend of Linza's testified she spoke on the phone to Linza the night of the fight, during which Linza sounded frightened and defendant could be heard screaming in the background. A deputy district attorney testified that in early October 1996, Linza stated she had been having an extramarital affair for about three months, and defendant knew about the affair.

A friend of Linza's testified that on October 11, 1996 (count 6—terrorist threat), Linza called the friend and related that when she arrived at work that morning, defendant was there and approached her car, cussed at her and

yelled, "I'm going to kill you." Linza drove away. Defendant was gone when she returned several minutes later.

On November 9, 1996 (count 7), son George saw Linza arrive home (having spent the night at her lover's home), very distraught. Linza told her son that defendant had just tried to run her down with his car while she was in her car. She said defendant's car hit Linza's car and hit several mailboxes. A California Highway Patrol (CHP) officer found mailboxes lying in the roadway next to tire skid marks, and defendant's license plate in some bushes. Defendant's sister testified he told her about the accident and said his car hit some mailboxes when a tire blew.

In November and December, 1996 (count 8—stalking), defendant and his wife were separated, but he repeatedly came to the house and called on the phone, threatening to kill her. He also called her at work repeatedly. Linza obtained a restraining order.

On the morning of December 12, 1996 (count 1—murder), Linza was in the process of moving, with help from friends and her son. Defendant appeared, snatched the house keys from his son's hand, used the keys to enter the house, and yanked the kitchen phone from its socket. Defendant pulled a gun from his pocket and pressed it against his son's stomach. The son knocked the gun away. Defendant retrieved it. The son ran across the street to call the police. While on the phone, he saw defendant screaming outside the house and heard several gunshots. Defendant, still holding the gun and with bloody arms, got into Linza's car and drove away. The son found Linza lying near the front door of the house. A friend of Linza's who was in the house at the time testified she saw and heard defendant yelling at Linza and heard glass breaking in the front door. While the friend was on a bedroom phone calling the police, she heard gunshots. The friend hid in a closet for a few minutes and then emerged and found Linza lifeless on the floor against the front door. A neighbor testified he heard the yelling and gunshots and saw defendant hurriedly drive away.

Linza died of a gunshot wound that was not self-inflicted.

Defendant's cousin testified he received a visit that morning from defendant, who stated he shot once, did not know if he hit Linza, so he shot two more times.

Over defendant's objection, the trial court granted the prosecution's request to introduce evidence of the following prior acts pursuant to Evidence Code section 1109:

In 1986, son George saw defendant slap Linza, pull a gun on her, grab her by the hair, and punch her in the face. In December 1988, the son saw defendant punch Linza in the stomach, upon which she collapsed and had a seizure. Defendant admitted the blow to a responding deputy sheriff. The son also saw defendant punch Linza as she was driving a car in August 1992. The son called the police on his father about seven or eight times between 1986 and 1996.[2]

The defense presented the following evidence: A doctor testified he treated defendant for impotence beginning in December 1995. He prescribed a pump which apparently helped defendant achieve erection.

Defendant testified in his own behalf. He is diabetic and has impotence problems. He and Linza had marital problems. She had a boyfriend, but that did not upset defendant. In May 1996, she and son George forged a $5,000 check against his bank account. He threatened to have her prosecuted. He was engaged in ongoing discussions with Linza about when she would move out of the house so he could move back in. He denied the charges against him. The incident in which his car hit the mailboxes was an accident due to a tire blowout. On the day of the killing, defendant was angry because he just wanted his keys. He had no particular reason for carrying with him that day the gun, which he had purchased months earlier for his sister's protection. The shooting was an accident. He threw the gun away because he was afraid the police would shoot him if they stopped him with a gun in his possession.

In the prosecution's rebuttal case, a deputy sheriff testified regarding the September 1996 incident that defendant admitted being angry at Linza for not attending his cousin's party but denied ever hitting her, did not mention any forged check, and said Linza might make up stories about him because he wanted a divorce.

The jury found defendant guilty of first degree murder (count 1) and found true that defendant personally used a handgun in committing the murder.

---

[2]Defendant's appellate brief cites as "Evidence Relating to Uncharged Acts" testimony that appears to be evidence going to the stalking charge in count 8, e.g., a friend testified to being in a car with Linza in December 1996, being chased by defendant. As we discuss *post*, although defendant claims this evidence was used as propensity evidence as well as substantive evidence of the charged offenses, we see no indication that the prosecution used these incidents as propensity evidence.

We note the trial court also granted the People's motion to admit hearsay statements of Linza pursuant to Evidence Code section 1370.

(§§ 187, subd. (a), 12022.5, subd. (a).) The jury also found defendant guilty of spousal battery (count 2), assault with a deadly weapon, with personal use of a knife (count 3), the September terrorist threat (count 4), attempted spousal rape (count 5), and stalking (count 8). The jury found defendant *not* guilty of the October terrorist threat (count 6) and the November assault with an automobile (count 7).

The trial court found defendant had a prior conviction for spousal abuse in 1990, and a prior conviction for assault with a deadly weapon, with personal use of a firearm, in 1979. The court also found defendant was released on bail when he committed counts 1 and 8. The court denied defendant's motion to strike the prior and to strike the sentence-doubling provision of the "Three Strikes" law. The court then sentenced defendant to a total term of 28 years 4 months, plus 50 years to life, as follows: eight years (double the midterm) as the principal term on count 2; two years (double one-third the midterm) on count 3; one year four months (double one-third the midterm) on count 4; two years stayed (§ 654) on count 5; one year four months stayed (§ 654) on count 8; 50 years (double term of 25 years to life) on the count 1 murder; enhancements of 10 years (§ 12022.5, subd. (a)(1)) and two years (§ 12022.1); and five years for the prior conviction (§ 667.5, subd. (a)).

## DISCUSSION

### I. *Evidence Code Section 1109*

■ Defendant contends the admission under Evidence Code section 1109, of evidence of prior acts for which he had been acquitted, violated due process by permitting the prosecutor to use evidence of prior acts of domestic violence to show a propensity to commit the charged offenses. We disagree.[3]

Evidence Code section 1109 provides in part: "(a) Except as provided in subdivision (e), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's

---

[3]Defendant speaks of Evidence Code section 1108, a parallel statute which addresses prior "sexual offenses" rather than prior "domestic violence." The evidence in this case was prior domestic violence admitted under Evidence Code section 1109, which was enacted in 1996 (Stats. 1996, ch. 261) and applied to defendant's trial in October 1997.

commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101,[4] if the evidence is not inadmissible pursuant to [Evidence Code] Section 352.[5] [¶] . . . [¶] (e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."

While this appeal was pending, the California Supreme Court issued an opinion holding that the parallel provision (Evid. Code, § 1108), which allows admission of prior sex offenses, does not violate due process. (*People v. Falsetta, supra,* 21 Cal.4th 903.) We shall conclude, by parity of reasoning, the same applies to Evidence Code section 1109, since the two statutes are virtually identical, except that one addresses prior sexual offenses while the other addresses prior domestic violence.

Thus, *Falsetta* noted evidence of prior acts is generally inadmissible to prove conduct, but the Legislature relaxed this constraint with respect to sex offense cases, by enacting Evidence Code section 1108. (*People v. Falsetta, supra,* 21 Cal.4th at p. 911.) *Falsetta* said the court will presume a statute is constitutional, and a party claiming a due process violation must carry a heavy burden of showing the statute offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. (*Id.* at p. 913.)

The defendant in *Falsetta* argued that California's rule against admitting propensity evidence (Evid. Code, § 1101, subd. (a), fn. 4, *ante*) is

---

[4]Evidence Code section 1101 provides: "(a) Except as provided in this section and in [Evidence Code] Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

[5]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

a long-standing rule that is necessary to assure due process. (*People v. Falsetta, supra,* 21 Cal.4th at p. 913.) The Supreme Court noted, however, that Evidence Code section 1101 has long been subject to far-ranging exceptions, e.g., evidence admitted to show intent and other matters specified in Evidence Code section 1101, subdivision (b) (fn. 4, *ante*). *Falsetta* said legislative enactment of a further exception applicable in sex offense cases may not necessarily offend fundamental historical principles. (21 Cal.4th at p. 913.) *Falsetta* said it was unclear whether the rule against "propensity" evidence in sex offense cases should be deemed a fundamental historical principle of justice, but even if the rule was deemed fundamental from a historical perspective, the court would nonetheless uphold section 1108 because it did not unduly "offend" those principles, in light of the substantial protections afforded to defendants. (21 Cal.4th at pp. 914-915.)

Thus, the Legislature determined the need for this evidence was critical in sex offense cases, given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 911-912, 914.) The Legislature declared the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining witness credibility. (*Ibid.*) The commission of other sex offenses is at least circumstantially relevant to the issue of disposition or propensity to commit these offenses. (*Ibid.*) Such evidence is deemed objectionable not because it lacks probative value, but because it has too much. (*Ibid.*)

*Falsetta* said three reasons support the general rule against admission of propensity evidence. (*People v. Falsetta, supra,* 21 Cal.4th at p. 915.) "The rule of exclusion (1) relieves the defendant of the often unfair burden of defending against both the charged offense and the other uncharged offenses, (2) promotes judicial efficiency by avoiding protracted 'mini-trials' to determine the truth or falsity of the prior charge, and (3) guards against undue prejudice arising from the admission of the defendant's other offenses. [Citations.]" (*Id.* at pp. 915-916.)

*Falsetta* said Evidence Code section 1108 did not offend these considerations for these reasons: First, the statute is limited to prior sex offenses in prosecutions for sex offenses (thus avoiding far-ranging attacks) and requires pretrial notice to the defendant that the prosecution seeks to use this

evidence at trial.[6] (*People v. Falsetta, supra,* 21 Cal.4th at p. 916.) Second, Evidence Code section 1108, by expressly allowing the trial court to exclude evidence under Evidence Code section 352, allowed the trial court to preclude inefficient mini-trials of prior acts. (*Ibid.*) Third, Evidence Code section 352 provided a safeguard against undue prejudice. (*Ibid.*) The trial court's discretion to exclude the prior acts evidence under Evidence Code section 352 saves Evidence Code section 1108 from the due process challenge. (*Ibid.*)

*Falsetta* further concluded Evidence Code section 1108 does not reduce the prosecution's burden to prove guilt beyond a reasonable doubt because a properly instructed jury will be told the defendant is presumed innocent, and the prosecution must prove him guilty beyond a reasonable doubt in order for the jury to convict. (*People v. Falsetta, supra,* 21 Cal.4th at p. 920.)

The same reasoning applies to prior acts of domestic violence under Evidence Code section 1109. Thus, the legislative history of the statute recognizes the special nature of domestic violence crime, as follows: "The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all." (Assem. Com. Rep. on Public Safety (June 25, 1996) pp. 3-4.) Moreover, the special nature of domestic violence cases is legislatively recognized in enactments such as the Law Enforcement Response to Domestic Violence, sections 13700 through 13731.

---

[6]*Falsetta* also said the prior acts in the case before the court were prior convictions arising from guilty pleas, hence the defendant would not be burdened unduly by having to respond. (*People v. Falsetta, supra,* 21 Cal.4th at p. 916.) In the case before us, the prior acts evidence did not involve convictions. However, neither the statute nor *Falsetta* requires prior convictions as a prerequisite for use of prior acts evidence. Moreover, although the existence of a prior conviction avoids a protracted "mini-trial" to determine the truth or falsity of the prior charge, the absence of a conviction in connection with other prior acts does not necessarily mean that the evidence will entail a protracted mini-trial. That precise issue is considered in section 352 in determining whether to exclude the evidence in a particular case.

Based on the foregoing, the California Legislature has determined the policy considerations favoring the exclusion of evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence.

Moreover, like Evidence Code section 1108, Evidence Code section 1109 is limited to prior acts of domestic violence in prosecutions for domestic violence, thus avoiding far-ranging attacks, and the statute requires pretrial notice to the defendant. Also, Evidence Code section 1109, by expressly allowing the trial court to exclude evidence under Evidence Code section 352, allows the trial court to preclude inefficient mini-trials of prior acts. Evidence Code section 352 provides a safeguard against undue prejudice. The trial court's discretion to exclude the prior acts evidence under Evidence Code section 352 saves Evidence Code section 1109 from defendant's due process challenge. Evidence Code section 1109 does not lessen the prosecution's burden of proof, because a properly instructed jury will be told the defendant is presumed innocent and the prosecution must prove him guilty beyond a reasonable doubt in order for the jury to convict.

Accordingly, we conclude *Falsetta*, by parity of reasoning, supports upholding the constitutional validity of Evidence Code section 1109 against a due process challenge.

Under his due process heading, defendant appears to argue Evidence Code section 1109 also violates the prohibition against cruel and unusual punishment, because it allows a defendant to be convicted based on his status as a perpetrator of domestic violence rather than his commission of the charged offenses. However, in *People v. Fitch* (1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753], we rejected an argument that Evidence Code section 1108 allowed conviction based on status, where the jury was instructed it could not convict the defendant simply because it found he had a character trait that tended to predispose him to commit the charged crime. (*People v. Fitch, supra*, 55 Cal.App.4th at pp. 183-184.) Here, as we discuss *post*, the jury instructions adequately instructed the jury not to convict defendant based on status.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 410.

## Disposition

The judgment is affirmed.

Callahan, J., and Kolkey, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 2000.