Filed 10/4/16  P. v. McLaughlin CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078624 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F03153) |
| v. | |
| ALIAS JAMES McLAUGHLIN, | |
| Defendant and Appellant. | |

Defendant Alias James McLaughlin tossed his crying infant daughter onto the floor.  She died from the resulting injuries.  A jury found defendant guilty of second degree murder and assault of a child younger than eight years old resulting in the child's death.  Defendant appeals his conviction contending the trial court erred in admitting evidence of his prior domestic violence against his girlfriend, the mother of his daughter.

1

He contends: (1) the evidence was inadmissible on the issue of knowledge under Evidence Code section 1101;[1] (2) the evidence was inadmissible under section 1109; and (3) section 1109 violates the due process clause. We will affirm the judgment.

## FACTUAL BACKGROUND

Defendant and his girlfriend, Dalena Lam, lived with their infant daughter Ada and Lam's 62-year-old uncle, Gayman Louie. The baby had been born prematurely on April 19, 2013. At three weeks old, she weighed only five pounds. She died on May 10, 2013, due to a single blunt force injury, which fractured her skull and caused her brain to hemorrhage. The injury was at the very high end of severity of traumatic brain injury to an infant.

Defendant had a history of domestic violence against Lam. In September 2012, when Lam was pregnant, she went to a friend's house against defendant's wishes and defendant grabbed her and held her down. Louie called the police and defendant was arrested for domestic violence, convicted of misdemeanor battery on a cohabitant, and ordered to complete a year-long domestic violence program. Defendant hit and grabbed Lam a few times during the pregnancy, when he got angry. He also attacked her after the baby was born. When a domestic violence counselor visited Lam in the hospital after the baby was born, defendant became angry and tried to pull out her intravenous catheter (IV). In early May 2013, defendant punched Lam in the face and arm when he did not receive the attention he wanted. Louie saw bruises on Lam's arms, shoulders, and face before, during, and after the pregnancy.

On the night of May 10, 2013, the baby woke up crying more than usual. Lam tried to soothe her while defendant tried to sleep. The baby continued to cry more loudly, a sound more like screaming. After about an hour or two, defendant joined Lam in trying

_____

[1] Undesignated statutory references are to the Evidence Code.

2

to quiet the baby. He squeezed milk into her mouth from the bottle, causing her to choke and spit up. He shoved a pacifier in her mouth. He shook her; she continued to cry. Defendant became increasingly irritated, punching and yelling at a pillow. Defendant yelled at the baby, told her to "shut the fuck up," and said he hoped she died. He put his hand over her mouth to stop her from crying, picked her up by her legs, and shook her for two to three minutes while she was upside down. Lam tried to grab the baby from defendant, but he pushed Lam down, hit her in the face, choked her, and called her a "stupid bitch." Defendant threw the baby into the bassinet feet first, three to five times. When she was in the bassinet, he turned her face down and threw blankets and pillows on top of her to make her stop crying. Then defendant threw her on the floor. The baby landed on blankets and Lam heard a "thump," the back of the baby's head hitting the ground. Lam took the baby into her arms, the baby was limp, cold, and gasping for breath. Defendant told Lam to give the baby a bath to warm her up. Lam wanted to call 911, but defendant would not let her, because he was afraid someone would find out what he had done. Ultimately, they called the baby's pediatrician who advised them to take the baby to the emergency room. Before they left, the baby stopped breathing and Lam called 911. Paramedics arrived and took the baby to the hospital. She died in the hospital later that day.

Defendant acknowledged he had been upset with the baby's crying. When he angrily put her down, he heard the impact of her head against the ground. He said he "knew" when he heard the force of the impact. He knew they had waited too long to call the ambulance and if they had called right away, they could have saved her. Defendant denied grabbing and punching Lam, stating he had only pushed her away from him.

## PROCEDURAL HISTORY

An information charged defendant with second degree murder (Pen. Code, § 187, subd. (a)—count one) and assault of a child younger than eight years old resulting in the

3

child's death (*id.*, § 273ab—count two).  A jury found him guilty on both counts.  The trial court sentenced defendant to 25 years to life on count two and 15 years to life on count one, stayed pursuant to Penal Code section 654.

## DISCUSSION

**1.0     Prior Acts of Domestic Violence Bearing on Issue of "Knowledge" and Propensity**

Defendant contends the trial court erred in admitting the evidence of defendant's prior acts of domestic violence as bearing on the issue of "knowledge" under section 1101 and as propensity evidence under section 1109.  As to the section 1101 claim, he argues his acts of having restrained and hit Lam do not bear on whether he "subjectively knew that an act of dropping, throwing or '[putting an infant] down angrily' was dangerous to the infant's life."  As to the section 1109 claim, defendant argues the trial court erred in its analysis under section 352, as the evidence of an assault against an adult had no probative value on propensity to commit domestic violence on an infant.  Defendant did not raise either of these objections in the trial court.  Accordingly, these claims are forfeited.

        1.1     *Background*

The People filed a motion in limine, seeking to introduce defendant's prior acts of domestic violence against Lam, under both sections 1109, to show propensity, and 1101, subdivision (b) to show intent, knowledge, and absence of mistake or accident.  Specifically, the People sought to introduce evidence of defendant's prior conviction for assaulting Lam in 2012, and "several incidents of domestic violence at the hands of the defendant that occurred both before and after [the baby] was killed. . . .  When she was interviewed five days after the murder of her daughter, Ms. Lam had multiple bruises on her body from the physical assaults inflicted by the defendant."  At the hearing on the motion, defense counsel objected to the admission of the evidence stating:  "I do have a

4

general objection under constitutional due process grounds, notwithstanding the current state of California Evidence Code [section] 1109, which says it comes in for all purposes for propensity, we object as being a denial of his fundamental due process. [¶] It's my understanding that we are talking about domestic violence related to the civilian witnesses that have been noticed to testify, which is Ms. Lam and Mr. Louie."

The court ruled the evidence admissible, finding as follows:

"It is clear that the victim, the baby in question here, was a cohabitant within the meaning of the Family Code [section] 6211, and I agree with the case that's been cited by the People that murder is the ultimate domestic violence.

"So it does appear that [section] 1109 does apply in this case, and the acts of violence that have been described in the motion fall under [section] 1109, and they would be admitted under that code section for propensity.

"The People have also indicated a request under [section] 1101[, subdivision] (b).

"I will say that those relevant purposes being absence of mistake or accident and knowledge and state of mind of the defendant, all those things do apply.

"[Section] 1101[, subdivision] (b) is not for propensity. That's reserved for [section] 1109. But certainly under [section] 1101[, subdivision] (b) there are relevant purposes as well.

"The Court is aware of its discretion and responsibility under . . . [s]ection 352. It does not appear that the other acts that have been described are more inflammatory than the charged crime certainly. There is nothing about them that would cause any particular confusion. It does not appear that the probative value is outweighed by a prejudicial effect. So I decline to exercise my discretion under [section] 352. Those prior acts are admitted."

5

At trial, Lam testified that defendant had previously physically abused her a lot. She described that in September 2012 he grabbed her and held her down in a chair to prevent her from going to a friend's house, for which he was arrested and convicted of domestic violence. While she was pregnant with the baby, he would get angry and hit her, grab her, and break her things. He also got angry at her while she was in the hospital after the baby's birth because she was speaking with a domestic violence counselor. He yelled at her and tried to pull out her IV. A few days before the baby was killed, defendant got angry with Lam because she wouldn't kiss him in the morning, and he punched her in the face and arm. She also sustained injuries as a result of defendant grabbing, hitting, and choking her on May 10, while she was trying to get the baby from her bassinet.

Lam's uncle, Louie, also testified at trial. More than once he saw bruises on Lam's arms and waist before and during the pregnancy, and on her arms, shoulders and face after the baby was born. Louie also testified about the incident in September 2012, when he saw defendant physically restraining Lam and called the police. He further testified that a few days prior to the baby's death, he heard defendant and Lam in the bathroom, and when they came out she was crying and had bruises around her eye. Louie confronted defendant. With his hands balled into fists, defendant threatened to hurt Louie "really bad."

Defendant did not object to this testimony by Lam or Louie.

After both the People and defense rested their cases, the court held an instructional conference. The trial court indicated it was going to give "a combination of [CALCRIM

6

Nos.] 852 and 375, which is referring to the prior domestic violence that was testified to."[2]

[2] The instruction given read as follows:

"The People presented evidence that the defendant committed domestic violence that was not charged in this case.

"*Domestic violence* means abuse committed against an adult who is a cohabitant or person with whom the defendant has had a child, or person who dated or is dating the defendant.

"*Abuse* means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit homicide as charged in count [one] and/or assault on a child as charged in count [two]. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty as charged. The People must still prove each charge beyond a reasonable doubt.

"You may also, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

"The defendant knew his actions were dangerous to human life or knew that his act by its nature would directly and probably result in great bodily injury to the child when he allegedly acted in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and acts and the charged offenses.

"Do not consider this evidence for any other purpose.

7

Defense counsel stated, "I believe our objections were originally made in limine related to domestic violence and [section] 1101[, subdivision] (b). So I'll assume those are preserved."

The court replied, "They are. [¶] And as far as the instruction is concerned and the combination, we've included essentially under [section] 1101[, subdivision] (b) the knowledge portion." The court then asked, "Any objection to that? Anybody? Okay."

Defense counsel replied, "Unless otherwise stated. Yeah. If it's coming in, that's the best form."

1.2  *Analysis*

In general, evidence of a person's character or trait of character is generally inadmissible to prove that person's conduct (§ 1101, subd. (a)); however, as an exception, it may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident (§ 1101, subd. (b)). Another exception is when a defendant is accused of an offense involving domestic violence. In that instance, unless precluded under section 352, evidence that the defendant committed other uncharged acts of domestic violence is admissible to show the defendant has a propensity to commit acts of domestic violence. (§ 1109, subd. (a)(1); *People v. Brown* (2011) 192 Cal.App.4th 1222, 1232.) Under section 352, "[i]t is within a trial court's discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice." (*People v. Mendoza* (2007) 42 Cal.4th 686, 699.)

---

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offenses or acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty as charged. The People must still prove each charge beyond a reasonable doubt."

8

"Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.' Pursuant to this statute, ' "we have consistently held that the 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable." ' (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.)" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21.) Failure to base a timely and specific objection to evidence on section 352 forfeits consideration on appeal of that ground for exclusion. (*People v. Williams* (1997) 16 Cal.4th 153, 206.)

As defendant notes, the trial court's ruling on the admissibility of defendant's prior acts of domestic violence was made in limine. "A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1047; *People v. Morris* (1991) 53 Cal.3d 152, 189-190, overruled on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)" (*People v. Holloway* (2004) 33 Cal.4th 96, 133.) " 'Generally when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal.' " (*People v. Morris, supra*, 53 Cal.3d at p. 189.) An in limine objection may "protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context. When such a motion is made and denied, the issue is preserved for appeal. On the other hand, if a motion *in limine* does not satisfy

9

each of these requirements, a proper objection satisfying . . . section 353 must be made to preserve the evidentiary issue for appeal." (*Morris,* at p. 190.)

Here, the *only* stated ground for defendant's objection was "a general objection under constitutional due process grounds" under section 1109. There was no objection to the evidence under section 1101, nor was there an objection under section 1109 on the grounds that the prejudicial effect outweighed the probative value (§ 352). At the time of the ruling the only proffer of the evidence was that defendant had a prior conviction for assaulting Lam in 2012, and several other incidents of domestic violence by defendant both before and after the baby was killed. Thus, as to his contentions on appeal that the evidence was improperly admitted under section 1101, and under the section 352 analysis of section 1109, defendant's in limine objection did not satisfy the *Morris* requirements. Neither of those specific legal grounds was raised at the in limine hearing.

Defendant claims, without citing to any part of the record, that the trial court's "*ultimate* ruling was that the section 1101[, subdivision] (b) evidence was admissible *only* on the 'knowledge' issue[]." The record does not support this claim. The issue of admissibility was not raised again after the in limine hearing. Defendant did not raise these objections during the testimonies of Lam or Louie and did not make a motion to strike the testimony of either on these grounds. The only other discussion in the record regarding defendant's uncharged acts of domestic violence took place in the context of the instructional conference. That discussion did not include either an objection to the evidence or an evidentiary ruling. Rather, it was a discussion on the propriety of the instruction—given the evidence that had *already* been admitted at trial. That is, there was no *evidentiary* ruling on the prior acts of domestic violence other than the one made

10

in limine.  Accordingly, defendant's claims as to section 1101 and the section 352 analysis of section 1109 are forfeited.[3]

## 2.0    Admissibility of Evidence Under Section 1109

Defendant also claims the trial court erred in admitting evidence of his uncharged acts of domestic violence under section 1109 on due process grounds.  He acknowledges that our Supreme Court has rejected a similar challenge to section 1108, a parallel provision involving evidence of prior sexual offenses.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)  We also reject defendant's claim.

It is well settled that the admission of propensity evidence comports with due process because the trial court must first carefully weigh the evidence under section 352.  (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917; *People v. Johnson* (2000) 77 Cal.App.4th 410, 420.)  In *Johnson*, we explained that "section 1109 is limited to prior acts of domestic violence in prosecutions for domestic violence, thus avoiding far-ranging attacks, and the statute requires pretrial notice to the defendant.  Also, . . . section 1109, by expressly allowing the trial court to exclude evidence under . . . section 352, allows the trial court to preclude inefficient mini-trials of prior acts.  [S]ection 352 provides a safeguard against undue prejudice.  The trial court's discretion to exclude the prior acts evidence under . . . section 352 saves . . . section 1109 from defendant's due process challenge.  [S]ection 1109 does not lessen the prosecution's burden of proof, because a properly instructed jury will be told the defendant is presumed innocent and the prosecution must prove him guilty beyond a reasonable doubt in order for the jury to convict." (*Johnson*, *supra*, 77 Cal.App.4th at p. 420.)  Defendant cites no authority decided since our decision in *Johnson* that calls its validity into question.  Accordingly,

---

[3] In the interest of judicial economy, we have resolved this issue without first requesting supplemental briefing.  Any party claiming to be aggrieved may petition for rehearing. (Gov. Code, § 68081.)

11

we continue to follow our reasoning in *Johnson* that section 1109 does not violate a criminal defendant's right to due process.

## DISPOSITION

The judgment is affirmed.


                                                  _____ BUTZ _____ , J.


We concur:


_____ RAYE _____ , P. J.


_____ MAURO _____ , J.