Filed 11/25/24  P. v. Salazar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100121 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE019908) |
| v. | |
| OSCAR NUNEZ SALAZAR, | |
| Defendant and Appellant. | |

A jury found defendant Oscar Nunez Salazar guilty of corporal injury and assault by means of force likely to produce great bodily injury.  Defendant argues the trial court abused its discretion by admitting evidence of prior uncharged acts of domestic violence against the victim.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I

### *The Charges*

In December 2021, defendant was involved in an altercation with his dating partner, T.D., at their apartment resulting in the charges in this case (December incident).

At trial, defendant and T.D., who began dating in June 2021, presented two distinct versions of the December incident. T.D. testified that she and defendant got into a verbal argument that became physical when defendant shoved her from the couch, causing her to hit her head on the floor and temporarily lose consciousness. According to T.D., defendant then climbed on top of her and struck her with his hand multiple times, scratched her nose in an attempt to gouge her eye, and bit her fingers before repeatedly banging her head on the floor, causing her to lose consciousness again. The struggle continued when T.D. attempted to get her green card and passport from a safe in the bedroom. There, defendant threw her on the bed and began choking her to the point of near unconsciousness.

Defendant testified that after the verbal argument began, he attempted to leave the apartment. T.D. sat on his lap and tried to make him stay. T.D.'s injuries, defendant testified, occurred when he stood up and caused them both to fall from the couch onto the floor. Defendant explained that T.D. followed him into the bedroom and continued the altercation but at no point did he strike, strangle, scratch, or bite her.

Photographs cataloguing T.D.'s injuries including scratches to her neck, face, hands, and arms; a cut on her nose; a swollen eye; bruising on her neck, arms, hands, and face; and cuts and bruising on her fingers were admitted into evidence. Sacramento Police Officer Celina Fuerte, the officer who made contact with T.D. after the December incident, testified she observed "redness and bruising, along with a scratch to [T.D.'s] left eye"; scratches on T.D.'s forehead; bruising on her neck, arms, and legs; and bite marks on her fingers.

Three other witnesses, another officer and two forensic investigators from the Sacramento Police Department, testified to the circumstances surrounding the December incident and defendant's arrest.

## II

### *Motions In Limine*

During pretrial motions, the prosecution moved to introduce evidence of defendant's prior uncharged acts of domestic violence pursuant to Evidence Code[1] section 1109. The alleged two acts occurred during a trip to Mexico approximately two months before the December incident. After hearing arguments, the trial court granted the motion, finding the evidence "survive[d] as relevant and not excludable under [section] 352" because the alleged incident was "a recent event," and defendant had "sufficient notice and [would] be able to adequately confront and challenge [the allegations] by virtue of the testimony of the one single other witness to the event in this matter." Because only defendant and T.D. would testify about the Mexico incidents, the court found that the evidence would not be unduly time consuming, unduly prejudicial, confusing, or misleading.

T.D. testified two prior acts occurred when she and defendant went on a trip to Mexico in September 2021. The first was when she asked to access a safe where defendant had stored their passports; defendant pushed her into the hotel bathtub twice, demanded her obedience, and threatened her. The second act was several days later; defendant was angry because he lost his driver's license and attacked T.D. again, this time by breaking a full bottle of wine on her head, causing her to lose consciousness.

Defendant testified that neither instance of abuse occurred. The only argument that occurred during the Mexico trip resulted in both he and T.D. smashing glass water

---

[1] Further undesignated section references are to the Evidence Code.

3

bottles in their hotel room. Defendant denied ever shoving T.D. or hitting her with a wine bottle, and further testified that she had access to the safe where their passports were kept.

The prosecution presented photographs taken by T.D., her daughter's husband, and defendant during the Mexico trip that showed bruising on T.D.'s leg, knee, shoulder, rib, and wrist.

III

*Verdicts And Sentence*

The jury found defendant guilty on both counts related to the December incident. Defendant was sentenced to two years for the assault conviction and two years for the corporal injury conviction, which was stayed.

Defendant appeals.

DISCUSSION

Defendant argues the trial court abused its discretion by admitting evidence of the Mexico incidents because it was more prejudicial than probative under section 352, thereby violating his due process rights under the state and federal constitutions. We disagree.

Under section 1109, evidence of a criminal defendant's previous acts of domestic violence is admissible at a criminal proceeding in which the defendant is accused of an offense involving domestic violence so long as it does not violate section 352. (§ 1109, subd. (a)(1).) Section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"[S]ection 352 serves as a safety valve for section 1109 that prohibits the admission of uncharged [domestic violence] evidence whenever its prejudicial impact substantially outweighs its probative value." (*People v. Fruits* (2016) 247 Cal.App.4th

4

188, 201.) " 'Trial courts enjoy " 'broad discretion' " in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. [Citations.] A trial court's exercise of discretion "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Id*. at p. 202.) "We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)

"In conducting the careful weighing process to determine whether propensity evidence is admissible under section 352, trial courts 'must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission.' " (*People v. Kerley* (2018) 23 Cal.App.5th 513, 535.) " ' " '[T]he principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.' " ' " (*People v. Fruits*, *supra*, 247 Cal.App.4th at p. 202.)

Here, the two uncharged offenses are similar to the underlying offense. All three incidents involved the same victim. All incidents involve access to and control over identifying documents. The December incident and the first Mexico incident involved access to a safe containing such documents, while the second Mexico incident occurred when defendant could not find his driver's license. Defendant's anger at the loss of control of these documents, and subsequent dominating and violent reaction, serve as the common theme of these incidents, increasing their probative value. (See *People v. Kerley*, *supra*, 23 Cal.App.5th at p. 535 [a scheme of dominance and control is typical of relationships involving domestic violence].) Further, as the trial court acknowledged, the

5

Mexico incidents were not remote in time from the underlying incident, occurring only two months prior.

Defendant argues the Mexico incidents carried a significant risk of "confusing and prejudicing the jury" because there was limited evidence to determine T.D.'s credibility. (Boldface omitted.) We disagree. Credibility and who to believe was the main issue in this case, as it is in most cases involving domestic violence. (See *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1313 ["domestic violence is quintessentially a secretive offense" with credibility at the center of every trial].) The Mexico testimony did not distract from the jury's responsibility in determining credibility but served as additional evidence for the jury to assess T.D.'s and defendant's credibility. (*Ibid.* [admission of prior domestic violence evidence assists the jury in realistically adjudging credibility].) Moreover, the Mexico incidents provided context for defendant and T.D.'s relationship, demonstrating a consistent and escalating pattern of abuse over the approximately six months the couple was together before the charged acts occurred, adding to the evidence's relevance. (See *People v. Kerley*, *supra*, 23 Cal.App.5th at p. 535 [relationships involving domestic violence are typically marked by escalating frequency and severity].)

Nor was the jury likely to be confused or misled by the volume of testimony regarding the Mexico incidents. (§ 352.) While a substantial portion of T.D.'s and defendant's testimony concerned the Mexico incidents, most of the testimony concerned the December incident. This includes testimony from four witnesses other than defendant and T.D. who were not questioned regarding the Mexico incidents at all. Because there was substantially more testimony about the December incident it is unlikely that the jury was confused or misled by the testimony about the Mexico incidents.

Defendant further argues the trial court should have "sanitized" the most inflammatory aspect of the Mexico incidents by barring testimony regarding defendant

6

hitting T.D. with a wine bottle. This allegation, defendant claims, was "clearly more severe" than the underlying December incident. The jury, defendant argues, ran a risk of convicting defendant because he escaped punishment for the wine bottle attack, rather than focusing on the underlying incident for which he was tried.

We disagree that the wine bottle evidence was more severe than the underlying incident. The wine bottle incident was a single attack, which caused T.D. to lose consciousness. The charged conduct accused defendant of an ongoing attack consisting of repeatedly banging T.D.'s head on the floor, knocking her unconscious twice, and then strangling her to the point of near unconsciousness. Defendant's cited authority to support his argument involves a substantially different factual scenario. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 730, 732-735 [holding the trial court abused its discretion in a case pertaining to the sexual assault of patients at a mental health institution by admitting evidence of a violent home invasion sex crime that occurred 20 years earlier upon a different victim].) Because defendant's prior conduct was not more severe than the charged crime, it is unlikely the jury would seek to punish him for the uncharged acts instead of delivering a fair verdict for the charged offense. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 283-284.) Accordingly, the trial court did not exercise its discretion in an arbitrary, capricious, or patently absurd manner by admitting evidence of defendant's uncharged acts. (See *People v. Fruits*, *supra*, 247 Cal.App.4th at p. 202.)

Further, "[t]he trial court's discretion to exclude the prior acts evidence under . . . section 352 saves . . . section 1109 from a due process challenge. [S]ection 1109 does not lessen the prosecution's burden of proof, because a properly instructed jury will be told the defendant is presumed innocent and the prosecution must prove him [or her] guilty beyond a reasonable doubt in order for the jury to convict." (*People v. Johnson* (2000) 77 Cal.App.4th 410, 420.) Such was the case here. Therefore, defendant did not suffer a due process violation.

7

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, J.

We concur:

/s/
EARL, P. J.

/s/
MAURO, J.

8