Filed 3/16/26  P. v. Castellon CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO CASTELLON,<br><br>    Defendant and Appellant. | 2d Crim. No. B342167<br>(Super. Ct. No. 2024006792)<br>(Ventura County) |

Fernando Castellon appeals a judgment after a jury trial following his conviction of assault with force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)) and corporal injury to a cohabitant (§ 273.5, subd. (a)).   The trial court sentenced him to an aggregate prison term of two years.  We conclude, among other things, that the trial court did not abuse its discretions by admitting evidence of prior uncharged incidents of domestic violence.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTS

On January 26, 2024, police officer Silvano Gonzalez was dispatched to an address in Oxnard, California for a call in reference to "domestic violence with strangulation." When Gonzalez arrived at the scene, he saw the victim, J.G., Castellon's girlfriend, "crying" and "clearly shaken up." She had a cut on her upper lip, redness on her arm, and an abrasion on her chest.

Gonzalez testified that J.G. told him that Castellon placed her in a "chokehold." This strangulation resulted in her seeing black dots. She believed she was going to "pass out and possibly die." Castellon dragged her, and "as she was being dragged, she left marks on the ground where her foot was." Sijifredo Fernandez, also known as "Ziggy," was a neighbor of Castellon and J.G. After hearing J.G. screaming, he came out to help. Fernandez began yelling at Castellon, and challenged him to a fight, at which point Castellon let J.G. go and ran away. At trial, Fernandez testified he did not remember the incident.

J.G. asked for an emergency protective order. Gonzalez testified J.G. was in "fear for her life." She wanted Castellon to stay away from her. Gonzalez testified he subsequently talked with the witness, Fernandez, who confirmed what he saw Castellon doing to J.G.

In a video recorded interview with police, J.G. said she had an argument with Castellon. She told Castellon: "Go home. I said go, go be with your ugly little kid. And cause I said ugly little kid, he turned around and he threw a guava at me." He put her in a "headlock." J.G. said, "[h]e was choking me and told me you're gonna go to sleep . . . . I was trying to pull his arm down and I couldn't."

2

At trial, J.G. recanted her statements to police and claimed the incident did not happen.

Another witness, J.G.'s mother, told police that she heard yelling and saw J.G. bleeding. She told Castellon not to touch her daughter. At trial she recanted her statements to police.

Michael Munn, a district attorney investigator and expert in domestic violence, testified domestic violence victims often recant after a domestic violence incident is reported to police. They "will change their story and they'll actually minimize the assault . . . ." Munn confirmed that recantation is "common for victims of domestic violence," and that abusers "tend to manipulate" victims "once they learn that charges" are brought.

*Prior Uncharged Domestic Violence Incidents*

The People requested that the trial court allow E.P., Castellon's former girlfriend, to testify about prior incidents of domestic violence he committed against her. Castellon's counsel objected. The court overruled the objection, stating that it weighed the relevant factors under Evidence Code section 352 and ruled that E.P. could testify at trial.

E.P. testified that in 2013, she confronted Castellon because she found another woman's identification card in her car after he used it. Castellon shoved E.P. and punched a door. In another incident in 2014, Castellon slapped E.P. and shoved her to the ground.

In 2015, while pregnant, E.P. found messages from a prostitute on Castellon's phone. When she confronted him about it, he slapped her and told her to get an abortion.

In 2018, E.P. went to pick up Castellon at a restaurant but he was not ready to leave. They had an argument and he placed her in a "chokehold." E.P. testified that there was another

3

incident in either 2018 or 2019 where they had an argument. Castellon shoved her to the ground and kicked her. He stopped the attack when his stepfather intervened to protect her.

In 2020, their young daughter was praying. Castellon used a "demonic voice" to tell the child there was no God. E.P. objected to his conduct. He covered E.P.'s mouth and nose with both hands and then grabbed her neck. Castellon stopped after the child said, "Dada, please stop." In May of 2020, E.P. stopped contacting Castellon. He drove his car near her and yelled "get in the fucking car." Castellon brandished something that she assumed was a weapon, so she ran to her car.

In July 2020, E.P., Castellon and their child went to Las Vegas. On the way home, they argued about who would pay for food at a restaurant. Castellon struck E.P. in the neck. Later, he stopped the car, tried to kick E.P. out of the vehicle and told the child "say goodbye to your mom." E.P. promised Castellon that she would "stay quiet the entire way home."

On April 27, 2021, E.P. and Castellon ended their relationship. E.P. had an argument with Castellon about who would make payments on a car. She testified Castellon "hit and sock[ed] me." Their daughter witnessed this incident. E.P. contacted the police. Castellon threatened her for being "a rat."

In December 2021, E.P. started a new relationship. Castellon stalked her and slashed the tires of her car. E.P. obtained a restraining order. Over a nine-year relationship, Castellon "strangled" her four times mostly using a "chokehold."

*Instruction On Domestic Violence Evidence*

Castellon was charged with assault and corporal injury to a cohabitant. At trial the court instructed jurors with CALJIC No. 852A, Evidence of Uncharged Domestic Violence, so they would

4

know how to evaluate E.P.'s testimony.  It provided, in relevant part, "If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence . . . ."

## DISCUSSION

### *Admission of Prior Acts Of Domestic Violence*

" '[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code section 1101] if the evidence is not inadmissible pursuant to [Evidence Code section 352].' " (*People v. Johnson* (2010) 185 Cal.App.4th 520, 528 (*Johnson I*).) The Legislature was aware of "the 'typically repetitive nature' of domestic violence."  (*Id*. at p. 532.)  " 'The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases.  Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity." (*People v. Johnson* (2000) 77 Cal.App.4th 410, 419. (*Johnson II*))  "[T]he California Legislature has determined the policy considerations favoring the exclusion of evidence of uncharged domestic violence offenses are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence."  (*Id*. at p. 420.)

Thus, if the jury finds "that defendant committed a prior offense involving domestic violence," it may " 'infer that the defendant had a disposition to commit other offenses involving domestic violence' and further infer 'that he was likely to commit

5

and did commit the crimes of which he is accused.' " (*Johnson I, supra*, 185 Cal.App.4th at p. 529.)

The People may present evidence to show that the defendant's pattern of domestic violence was "indicative of defendant's ' "larger scheme of dominance and control" ' " over his domestic partners. (*People v. Brown* ( 2011) 192 Cal.App.4th 1222, 1237 (*Brown*).) But there is a "safety valve" in the statute "that continues to prohibit admission of such evidence whenever its prejudicial impact substantially outweighs its probative value. ([Evid. Code, § 352].)" (*Johnson I, supra*, 185 Cal.App.4th at p. 529.) "We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (*Id.* at p. 531.)

Castellon contends the court erred by admitting E.P.'s testimony. But this was proper propensity evidence to show: (1) that during his long relationship with E.P., he dominated her by using a "continuous" pattern of violence at every stage of their relationship (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 706 (*Cabrera*)), and (2) this pattern escalated " 'in frequency and severity . . .' " over time which is a relevant typical pattern in domestic violence cases. (*Johnson II, supra*, 77 Cal.App.4th at p. 419.) In 2013 and 2015, Castellon had slapped and shoved E.P., by 2018 he had escalated the violence by strangling her. This evidence showed Castellon's " ' "larger scheme of dominance and control." ' " (*Brown, supra*, 192 Cal.App.4th at p. 1237.) Moreover, E.P.'s testimony that Castellon had placed her in chokeholds to strangle her was highly probative evidence because it was the same conduct he used to commit the charged offenses. (*People v. Robinson* (2024) 99 Cal.App.5th 1345, 1358-1359.)

Castellon claims the court erred by admitting evidence of multiple incidents of domestic violence. We disagree. After the

6

trial court overruled Castellon's objection to propensity evidence, his counsel made no request to limit the number of incidents E.P. could testify about.  (*People v. Gurule* (2002) 28 Cal.4th 557, 602 (*Gurule*) [failure to raise the issue at trial forfeits the issue on appeal].)  Moreover, courts have properly admitted evidence of multiple incidents of domestic violence to show a pattern of conduct.  (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1194; *People v. Kerley* (2018) 23 Cal.App.5th 513, 539 (*Kerley*) [trial court properly admitted 10 incidents of domestic violence as propensity evidence].)  Evidence that Castellon physically abused E.P. "multiple times is more probative than evidence that he did so once or twice; it is the frequency, regularity, and severity with which" he attacked E.P "that infuses this propensity evidence with probative strength."  (*Kerley*, *supra*, at p. 536.)

Under Evidence Code section 352, the trial court may exclude evidence that will "necessitate undue consumption of time or . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  E.P.'s testimony was not "inflammatory" because it did not include any evidence of physical violence that was more severe than the physical violence Castellon used in committing the charged offenses.  (*Cabrera*, *supra*, 152 Cal.App.4th at p. 706.)  The jury would not have been confused because it was properly instructed on how to weigh E.P.'s evidence.

The time this evidence consumed was not excessive.  The jury heard six witnesses testify in two days of trial testimony, and only E.P. testified about the prior incidents of domestic violence.  Her testimony lasted less than an hour and spanned only 29 pages of the reporter's transcript.  (*Cabrera*, *supra*, 152 Cal.App.4th at p. 706 [evidence was not excessive because it "only

took up a total of 97 pages of the reporter's transcript"]; see also *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139 [domestic violence evidence that totaled 35 pages of the trial transcript was not excessive].)

The trial court properly weighed the prejudicial factors with the probative value of E.P.'s testimony before allowing her to testify. The court stated, "it's *only one witness*, I'm inclined, in doing the *typical weighing* that we judges do under [Evidence Code section 352], to allow it [in] this case." (Italics added.) "'The record as a whole shows the court was well aware of, and consistently performed its duty . . . to balance the probative value of evidence against any prejudicial effect.'" (*People v. Riel* (2000) 22 Cal.4th 1153, 1187-1188 (*Riel*).) It could reasonably balance the factors in favor of admissibility because E.P.'s evidence was highly probative on his pattern of conduct and the potential prejudicial impact was limited. (*People v. Schader* (1969) 71 Cal.2d 761, 774.)

Castellon contends the trial court erred by allowing E.P. to testify that there were three instances where their daughter was present during domestic violence incidents. He claims the court should have excluded the evidence about the child's presence during these incidents. But during this testimony Castellon's counsel did not object, constituting forfeiture of this issue on appeal. (*Gurule, supra*, 28 Cal.4th at p. 602; *Riel, supra*, 22 Cal.4th at pp. 1202-1203; *People v. Thompson* (2022) 83 Cal.App.5th 69, 100-101.)

Moreover, the evidence of their daughter's presence was relevant to show that his propensity to commit domestic violence was so strong that he could not refrain from initiating violence even when the child was present. The evidence about the child's

8

conduct was also highly probative on a relevant pattern in Castellon's conduct. He stopped his attack on his victims when a third party intervened. On the charged offenses, Castellon stopped his attack when a neighbor intervened. E.P.'s evidence showed he stopped his attack when the child asked him to stop. Evidence showing such similarity in conduct was properly admitted. (*Kerley*, *supra*, 23 Cal.App.5th 513, 536.)

We conclude that Castellon's remaining contentions do not show grounds for a reversal.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

9

Robert J. Schuit, Judge

Superior Court County of Ventura

_____

Jake E. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Irvi, Supervising Attorney General, Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.