Filed 12/20/23  P. v. Davila CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDGARD DAVILA,<br><br>    Defendant and Appellant. | D081761<br><br><br>(Super. Ct. No. FSB21004186) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Michael A. Smith, Judge.  Affirmed with directions.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Edgard Davila, who was convicted of assaulting the mother of his child with a knife, contends the trial court abused its discretion by admitting evidence he committed three prior acts of domestic violence against the same victim. Finding no error, we reject this contention.

While this appeal was pending, the California Department of Corrections and Rehabilitation (CDCR) notified the trial court of various discrepancies in the abstract of judgment. The court recalled Davila's sentence to address the discrepancies but then resentenced Davila in absentia to eight years, one year more than the original sentence. We conclude the court erred in resentencing Davila without his presence, which the Attorney General concedes, and that it had no discretion to increase his sentence to eight years. We thus vacate the amended sentence and direct the trial court to amend the abstract of judgment from Davila's initial sentencing to correct certain sentencing discrepancies. We otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Davila and Jane Doe were in a dating relationship for approximately six years. They lived together for four years and had one child together.

After returning home from dinner with friends on the evening of November 14, 2021, Davila and Doe started to argue. Doe had just put their five-month-old baby to sleep. She became upset because Davila was on his phone. A neighbor, who heard the couple arguing, looked outside her window when she heard Doe say, "he stabbed me and hurt the baby." The neighbor heard Doe ask Davila not to take the car because she needed to go to the hospital; she then saw Davila drive away. The neighbor went outside to

2

check on Doe who was crying and looking disheveled; she called 911 when she saw Doe was bleeding.

When police officers arrived, Doe was "bleeding profusely" and "crying hysterically." She told the officers that Davila threw a glass at her and started hitting her and "socking" her head during an argument. She reported that Davila pulled out a black pocketknife and stabbed her in the hand while he "had [her] on the floor."

Doe was taken to the hospital where she was treated for her injuries. She required stitches on her left hand which was cut on the web between her thumb and index finger. The officer who followed Doe to the hospital described the injuries on her hand to be "puncture-type wounds." She also had scratches on her face, red marks on her head, bleeding on her hands and legs, and a bite mark on her shoulder.

The next day, officers returned to the couple's home. Speaking to the officers at the front door, Doe told them Davila was not home. The officers then found Davila hiding under the bed when they searched the residence. He was arrested and had no visible injuries. The officers recovered a black pocketknife from his front pocket.

Davila was charged with corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a); count 1) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 2). As to both counts, it was alleged he personally inflicted great bodily injury under circumstances involving domestic violence (Pen. Code, § 12022.7, subd. (e)) and, as to count 1, that he personally used a deadly and dangerous weapon (Pen. Code, § 12022, subd. (b)(1)). While Davila was in custody pending trial for these offenses, he and Doe were married.

At trial, Doe changed her story of what happened on the evening of November 14, 2021. She testified that she provoked a fight with Davila because she was angry he was on his phone. They started pushing each other and she tripped on the couch. Davila was then on top of her, "grabbing [her] down." Davila hit her and grabbed her hair while she tried to "dig [her] nails" in his face. She denied that Davila stabbed her with his pocketknife. Rather, she grabbed a knife that was on Davila's waistband as he was on top of her. Davila then "snatched" the knife from her, and the blade opened and cut her hand. Doe claimed her statement to the officers that Davila pulled out his pocketknife and stabbed her "might have been a lie, [it] may have been [her] exaggerating." She explained she wanted to make Davila look bad because she was angry and wanted him out of the house.

Doe admitted she loved Davila and did not want to testify against him. She spoke to him on the phone multiple times and visited him in custody with her children.[1] She visited Davila in jail 28 times. A jail call was played for the jury regarding Doe's decision to marry Davila while he was in custody.

Pursuant to Evidence Code section 1109,[2] the trial court permitted the prosecution to present evidence of three prior acts of domestic abuse by Davila against Doe. We discuss these prior acts in further detail below. Doe acknowledged at trial that there were three prior incidents of domestic violence in which the police were called. She claimed Davila only became

---

[1]    Doe has four children, one of whom she shares with Davila. At the time of the charged offenses, the children resided with Doe and Davila in their shared home.

[2]    All further unspecified statutory references are to the Evidence Code.

4

violent when he consumed alcohol and was only violent with her in 2021, the year before the charged offenses.

The jury convicted Davila of both corporal injury to a cohabitant and assault with a deadly weapon, and found true he personally inflicted great bodily injury and personally used a deadly and dangerous weapon. In a bifurcated proceeding, the trial court found that Davila was convicted of a prior violation of Penal Code section 273.5, subdivision (a),[3] within seven years of the charged offense, pursuant to Penal Code section 273.5, subdivision (f)(1). The court sentenced Davila to seven years in state prison.

DISCUSSION

I.

*Prior Acts of Domestic Violence*

Section 1109 provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [s]ection 1101 if the evidence is not inadmissible pursuant to [s]ection 352." (§ 1109, subd. (a)(1).) A specific exception to the general prohibition on propensity evidence, "section 1109 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes.' " (*People v. Kerley* (2018) 23 Cal.App.5th 513, 531 (*Kerley*).) Even if propensity evidence is admissible under section 1109, "it must be excluded under section 352 where its probative value is substantially outweighed by the probability that its admission will consume too much time, cause undue prejudice, confuse the issues, or mislead the jury." (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192 (*Merchant*).) We review a trial

---

[3] This conviction is based on the second prior act of domestic abuse admitted.

court's exercise of discretion to admit the evidence for an abuse of discretion. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)

Here, the trial court admitted evidence of three prior acts of domestic abuse by Davila against Doe. First, on May 8, 2021, when Davila became "drunk and angry," he pushed Doe who was eight months pregnant to the ground. He then grabbed Doe's hair and held her down. After he let her go, he told Doe it "felt good" to hurt her. Doe ran to a nearby convenience store and called police.

Second, on August 11, 2021, Davila and Doe began to argue after Davila had been driving fast with their baby in the car. Davila became offended when Doe told him to slow down. Davila, who had been drinking, "got in [Doe's] face" and spit and growled at her. As their baby was on the bed, Davila grabbed Doe by her hair and hit her "really hard" with an open hand. Davila shoved Doe in a corner and hit her with both hands. Before she fell to the ground, Davila bit Doe in her face. The jury was shown a photograph of an apparent bitemark on Doe's back from this incident.

Third, on October 22, 2021, approximately three weeks before Davila's arrest for the charged offenses, Davila and Doe argued because she did not want him to drive after he had been drinking. Davila pushed Doe while he held their baby, and then "slammed" Doe and she fell to the ground. Davila then chased Doe as she ran toward a neighbor's house. He pulled her to the ground and hit her in the face with both hands in front of the neighbors. When the neighbors tried to stop Davila from continuing to hit Doe, he tried to fight them.

Claiming the trial court abused its discretion, Davila asserts there was not a strong pattern of abuse and the probative value was lessened by the lack of eyewitness corroboration. He contends "[t]he admission of so many

6

prior assaults against the same victim made this trial more about the prior incidents than the charged incident." He argues "[t]he timing of the prior incidents, so close together, and close to the charged offense[s], rendered the previous incidents unduly prejudicial" and inadmissible under section 352. We disagree. It is precisely "the frequency, regularity, and severity" of the abuse that Doe endured "that infuses this propensity evidence with probative strength." (*Kerley, supra*, 23 Cal.App.5th at p. 536.)

In enacting section 1109, the California Legislature recognized "the special nature of domestic violence crime" in that " '[t]he propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. . . . Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all.' (Assem. Com. Rep. on Public Safety (June 25, 1996) pp. 3-4.)." (*People v. Johnson* (2000) 77 Cal.App.4th 410, 419.) Section 1109 "reflects the Legislature's determination that in domestic violence cases, similar prior offenses are uniquely probative of a defendant's guilt on a later occasion." (*Merchant, supra*, 40 Cal.App.5th at p. 1192.)

Here, Davila's acts of violence against Doe—four incidents in the span of six months—revealed a pattern of escalating violence and tended to show a larger scheme of dominance and control. Indeed, in the first uncharged act, after Davila pushed a pregnant Doe to the ground, grabbed her hair and held

her down, Davila told her it "felt good" to hurt her.  Three months later, in the second uncharged act, Davila again grabbed Doe by the hair and shoved her to the ground.  This time, he spit at her, repeatedly struck her, and bit her face.  Two months later, Davila "slammed" Doe, who fell to the ground and, undeterred by neighbors, continued to strike Doe while she was on the ground.  Three weeks later, Davila assaulted Doe with a knife, causing her great bodily injury.  The similarity and escalating nature of the prior acts of violence is what made the propensity evidence uniquely probative of Davila's guilt on the charged and fourth occasion (*Merchant*, *supra*, 40 Cal.App.5th at p. 1192), particularly where Doe, as all too common in these cases, recanted her report that Davila stabbed her at trial.

Davila compares his case to *Kerley*, and asserts there were "more instances of prior abuse in *Kerley* which created a stronger pattern of abuse than what occurred in this case."  This is sufficient corroboration.  (See *People v. Mani* (2022) 74 Cal.App.5th 343, 373 ["contemporaneous reports to the police can serve as corroboration that an event occurred"].)

Even if admissible under section 1109, propensity evidence in domestic violence cases must be excluded if under section 352 its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice.  " 'The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging." ' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)  Relevant factors courts have applied in evaluating prejudice in the analogous context

of section 1108[4] include, "(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)

We agree with the Attorney General that none of the prior incidents were substantially more inflammatory than the charged offenses. In the charged offenses, unlike the prior incidents, Davila assaulted Doe with a knife and inflicted great bodily injury that required medical treatment. In addition to the stab wound on Doe's hand, officers observed red marks on Doe's head, bleeding on her hands and legs, and a bite mark on her shoulder. Davila then took their shared car after the attack, preventing Doe from driving herself to the hospital to seek medical care.

Further, we do not agree that the details of the propensity evidence objected to by Davila on appeal, including that Doe was pregnant during one of the prior incidents and Davila was alleged to have driven drunk with their baby in another, were *unduly* prejudicial. We first note that Davila did not request a sanitized version of the section 1109 evidence, and thus forfeited the issue on appeal. (*People v. Clark* (2016) 63 Cal.4th 522, 561.) However, even if he had requested sanitization, his claim would not succeed on the merits.

---

[4] Section 1108 applies to criminal cases in which a defendant is charged with a sexual offense; it provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) Sections 1108 and 1109 "are virtually identical, except that one addresses prior sexual offenses while the other addresses prior domestic violence." (*People v. Johnson*, *supra*, 77 Cal.App.4th at p. 417.)

Relying on *People v. Disa* (2016) 1 Cal.App.5th 654, Davila argues that inflammatory details from the prior acts were unduly prejudicial. In *Disa*, the defendant admitted he killed his girlfriend by putting her in a chokehold, but denied he meant to kill her. (*Id.* at p. 657.) The jury convicted him of premeditated first degree murder. (*Ibid.*) The trial court admitted evidence of a prior incident it acknowledged involved " 'totally different' acts, including lying in wait and the use of a knife," to show propensity to commit domestic violence under section 1109 but not premeditation and deliberation. (*Id.* at pp. 672–673.) The *Disa* court concluded there was a "serious risk the jury would improperly use the specific facts of defendant's past conduct [extensive planning and waiting], to find premeditation and deliberation in the current matter." (*Id.* at p. 673.) The court held the evidence was highly inflammatory and not specifically relevant to the purpose for which the past incident of domestic violence was admitted, that is, to show a propensity to do violence to a partner or former partner. (*Id.* at p. 674.)

*Disa* is inapposite. As we have already discussed, the prior uncharged acts were no more inflammatory than the charged offenses in which Davila assaulted Doe with a knife and caused her great bodily injury. Evidence that Doe was pregnant during one of the prior incidents, and thus particularly vulnerable, and evidence of Davila's conduct leading to his prior violent acts, is directly relevant to Davila's propensity to commit violence against Doe, as well as the pattern of escalating violence. The details of Davila's prior conduct are not unduly prejudicial merely because the evidence was damaging to his case—rather the " 'prejudice' " discussed in section 352 refers to evidence that "uniquely tends to evoke an emotional bias against the defendant as an individual and *which has very little effect on the issues*." (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138, italics added.) The extent

10

of the evidence relating to the prior incidents was squarely within the trial court's "broad discretion" to admit.  (See *Kerley, supra*, 23 Cal.App.5th at p. 532 [" ' "Trial courts enjoy ' "broad discretion" ' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value." ' "].)

Further, there was also little risk of confusion of the issues because the prior incidents were described by date and the court immediately gave a limiting instruction after Doe testified.  As Davila acknowledged, the uncharged offenses were not remote in time having occurred with the charged offenses in the span of six months.  Finally, viewing the evidence of the prior incidents in the context of the trial as a whole, including the jury instructions, witness testimony, and closing arguments, we conclude the charged offenses were the primary focus of the trial.  (See *Kerley, supra*, 23 Cal.App.5th at p. 539 [evaluating whether the charged offense was the "primary focus" of the trial].)  The majority of the prosecution's argument was focused on the charged offense, and the entirety of the witness testimony took less than three days with the evidence relating to the prior incidents constituting only a portion of this testimony.  Thus the amount of time in introducing the prior acts evidence was not excessive.

Because we conclude the trial court did not err in its evidentiary ruling, we pass on Davila's claim of prejudice.

## II.

### *Sentencing Errors*

A.    *Initial Sentencing in September 2022*

At the initial sentencing on September 26, 2022, the trial court sentenced Davila to a term of seven years in state prison.  In its oral pronouncement of judgment, the court imposed the middle term of four years

on count 1 (Pen. Code, § 273.5, subds. (a), (f)(1)[5]) and a consecutive three years for the great bodily injury enhancement (Pen. Code, § 12022.7, subd. (e)). As to the one-year deadly weapon enhancement (Pen. Code, § 12022, subd. (b)(1)), the court stated it would impose but strike the penalty pursuant to Penal Code section 1385. The court imposed the middle term of three years on count 2 (Pen. Code, § 245, subd. (a)(1)), and one year for the great bodily injury enhancement (Pen. Code, § 12022.7, subd. (e)). The court stayed both punishments pursuant to Penal Code section 654.

In their initial briefing on appeal, the parties agree that several corrections to the abstract of judgment should be made. First, the parties agree the abstract of judgment should be amended to reflect that the punishment on count 2 and the related allegation was stayed pursuant to Penal Code section 654. Next, the parties agree the great bodily injury allegation attached to count 2 should be three years, rather than the one-year term imposed by the trial court, because the term was stayed and should be imposed full term rather than one-third of the middle term. Finally, Davila and the Attorney Generally initially agreed the $40 court operations assessment, the $30 conviction assessment fee, and the "blank assessment fee" pursuant to Government Code section 76000.10, subdivision (c), should be stricken from the abstract of judgment because they were not orally pronounced by the court. However, in his reply brief on appeal, Davila revised his position that the $40 court operations assessment and $30 conviction assessment fee were not imposed by the trial court, and withdrew his request to strike the fees.

---

[5] The sentencing triad for count 1 with a prior conviction for domestic violence is two, four, and five years pursuant to Penal Code section 273.5, subdivision (f)(1).

B.    *Resentencing in February 2023*

While this appeal was pending, CDCR notified the trial court of various discrepancies in the abstract of judgment and related minute order.  On February 24, 2023, the trial court recalled Davila's sentence to address the sentencing discrepancies raised by CDCR and resentenced Davila in absentia.  Although the court previously struck the deadly weapon allegation attached to count 1 at Davila's initial sentencing, at the resentencing hearing the court imposed a consecutive one-year term.  This resulted in the court imposing an aggregate prison sentence of eight years, a one-year increase from Davila's original sentence.

Following the February 24, 2023 resentencing hearing, the parties submitted supplemental briefing amending their arguments.[6]  Davila contends the trial court was without jurisdiction to conduct a resentencing while his appeal was pending, and the trial court was not permitted to impose a sentence in his absence.  The Attorney General disagrees that the trial court lacked jurisdiction to resentence Davila while the appeal was pending, arguing that an unauthorized sentence may be corrected at any time.  However, they agree that the trial court impermissibly resentenced him to an additional one-year term in his absence.  Thus, the Attorney General argues the matter should be remanded for resentencing.

C.    *Analysis*

We agree with the parties that the trial court impermissibly resentenced Davila in absentia.  A defendant is entitled to be present at a

---

[6]    On July 7, 2023, Davila moved to file supplemental briefing to address the resentencing hearing.  We granted Davila's request on July 11, 2023, and the parties submitted supplemental briefing which we have reviewed in deciding this appeal.

resentencing hearing because it is a critical stage of the criminal proceeding at which the defendant's substantial rights may be affected. (*People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1417.) At the February 2023 hearing, the trial court did not merely correct clerical errors to the abstract of judgment. Rather, the court effectively resentenced Davila when it increased his sentence by one year. Although defense counsel waived Davila's presence to "address the sentencing issues bought up by [CDCR] in their letter," the record does not reflect that Davila's presence was waived for the purpose of a full resentencing hearing. Even assuming defense counsel intended to waive Davila's presence for the resentencing hearing, the court did not comply with the statutory directive that a defendant's presence may not be waived for sentencing in a felony case unless the defendant, "in open court and on the record, or in a notarized writing, requests that judgment be pronounced against him or her in his or her absence." (Pen. Code, § 1193, subd. (a)[7].) Accordingly, the February 24, 2023, pronouncement of judgment, and the abstract of judgment dated March 3, 2023, shall be vacated.

However, we decline to remand the matter for a full resentencing. "A 'reviewing court has the power, when a trial court has made a mistake in sentencing' for example, 'to remand with directions that do not inevitably

_____

[7] Penal Code section 1193, subdivision (a), states, in relevant part, "[i]f the conviction is for a felony, the defendant shall be personally present when judgment is pronounced against him or her, unless the defendant, in open court and on the record, or in a notarized writing, requests that judgment be pronounced against him or her in his or her absence, and that he or she be represented by an attorney when judgment is pronounced, and the court approves his or her absence during the pronouncement of judgment, or unless, after the exercise of reasonable diligence to procure the presence of the defendant, the court shall find that it will be in the interest of justice that judgment be pronounced in his or her absence[.]"

14

require all of the procedural steps involved in arraignment for judgment and sentencing.' " (*People v. Brooks* (2020) 53 Cal.App.5th 919, 925.)  There are circumstances in which a trial court may conduct a full resentencing hearing on remand so the court may exercise " 'its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)  Here, there are no such changed circumstances that would require the trial court to revisit its discretion.  The sentencing discrepancies identified by the CDCR were simply related to discrepancies between the court's oral pronouncement of judgment, the minute order from the sentencing hearing, and the abstract of judgment and do not involve an exercise of the trial court's discretion.

Accordingly, the abstract of judgment shall reflect a total aggregate prison term of seven years, as pronounced at Davila's initial sentencing.  We order the errors in the September 2022 abstract of judgment corrected in the following manner:

### Count 1

The abstract of judgment shall be amended to reflect that Davila was convicted of a violation of Penal Code section 273.5, subdivision (a), *with* an allegation that he was convicted of a prior domestic violence offense within seven years pursuant to subdivision (f)(1).  The abstract shall also reflect that the deadly weapon allegation attached to count 1 (Pen. Code, § 12022, subd. (b)(1)) was stricken pursuant to Penal Code section 1385.  (See *People v. Jones* (2007) 157 Cal.App.4th 1373, 1383 [a trial court may strike a sentence enhancement for personal use of a deadly or dangerous weapon in the furtherance of justice pursuant to Pen. Code, § 1385.].)  Finally, the abstract shall reflect the trial court's pronouncement of a three-year consecutive sentence for the great bodily injury allegation (Pen. Code, § 12022.7, subd. (e)) attached to count 1.

15

## Count 2

The abstract of judgment shall be amended to reflect the imposition of a three-year term for count 2, and a three-year term for the great bodily injury allegation attached to count 2 (Pen. Code, § 12022.7, subd. (e), stayed pursuant to Penal Code section 654. (See *People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164 [one-third of the middle term shall be applied to subordinate *consecutive* terms, not to sentences stayed under Pen. Code, § 654].)

## Fines

We agree with the parties that the abstract of judgment should be amended to delete the reference to an unknown fine pursuant to Government Code section 76000.10, subdivision (c), because Davila was not convicted of a violation of the Vehicle Code. (See Gov. Code, § 76000.10, subd. (c) ["a penalty of four dollars ($4) shall be imposed upon every conviction for a violation of the Vehicle Code"].)

However, we reject Davila's concession that the $40 and $30 assessments should *not* be stricken, and we agree with the Attorney General that the abstract should be amended to strike the fees. Although the trial court expressed an intent to impose "court construction and operation fees," it did not provide further specificity as to the basis or the amount of the fines. As part of the abstract, the trial court is required "to list the amount and statutory basis for each base fine and the amount and statutory basis for each penalty assessment in the abstract of judgment." (*People v. Hamed* (2013) 221 Cal.App.4th 928, 940.) Several courts have concluded that the abstract of judgment must specify the nature and amount of penalty assessments imposed following a criminal conviction, in addition to the base fines. (See, e.g., *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1459; *People*

16

*v. Sharret* (2011) 191 Cal.App.4th 859, 864, 869; *People v. High* (2004) 119 Cal.App.4th 1192, 1200.) The trial court did not adequately describe the amount and nature of the penalty assessments, and therefore they must be stricken. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185–188 [it is the trial court's oral pronouncement of judgment that controls over the abstract of judgment.].)

## DISPOSITION

The judgment is affirmed. The February 24, 2023, pronouncement of judgment, and the amended abstract of judgment dated March 3, 2023, are vacated. The trial court is directed to modify the abstract of judgment filed September 29, 2022, as follows:

As to count 1, the abstract of judgment shall be amended to reflect that Davila was convicted of a violation of Penal Code section 273.5, subdivision (a), *with* an allegation that he was convicted of a prior domestic violence offense within seven years pursuant to subdivision (f)(1); that the associated deadly weapon allegation (Pen. Code, § 12022, subd. (b)(1)) was stricken pursuant to Penal Code section 1385; and the imposition of a three-year consecutive sentence for the associated great bodily injury allegation (Pen. Code, § 12022.7, subd. (e)).

As to count 2, the abstract of judgment shall be amended to reflect the imposition of a three-year term for count 2, and a three-year term for the associated great bodily injury allegation (Pen. Code, § 12022.7, subd. (e)), stayed pursuant to Penal Code section 654.

As to the fines, the abstract of judgment shall be amended to delete the reference to an unknown fine pursuant to Government Code section 76000.10, subdivision (c); the $40 and $30 assessments shall be stricken.

17

The court shall forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

DO, J.

WE CONCUR:

IRION, Acting P. J.

BUCHANAN, J.